*In re* ROBERTA JO CALKINS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* LARITA CALKINS, Respondent-Appellant.)

Third District    No. 80-382

Opinion filed May 5, 1981.

Daniel P. Nagan, of Bisbee & Nagan, of Macomb, for appellant.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by LaRita Calkins, mother of Roberta Jo Calkins, a minor, from an order of adjudication and a dispositional order of the Circuit Court of McDonough County. Roberta, the minor, was found to be neglected and adjudged a ward of the court. The dispositional order found the mother unfit and the minor was placed under the guardianship of the Department of Children and Family Services (hereinafter referred to as the DCFS). Physical custody was granted to the father, Glen Calkins, subject to certain visitation rights of the mother.

Roberta Jo Calkins was born on August 5, 1975, with congenital cleft lip and cleft palate deformities. The marriage of the child's parents, Glen and LaRita, was dissolved on December 2, 1977. The mother was awarded custody of Roberta.

On March 10, 1980, Roberta was admitted to St. Francis Hospital in Peoria for a third operation for the repair of her lip and palate deformities. While she was recuperating, LaRita, the mother, interfered with and refused to follow the doctor's orders regarding the care of Roberta. Specifically, the mother was accused of removing the child's mist tent, removing arm splints from the child, turning the child around roughly and expressing a desire to feed the child hard candy when the prescribed diet was to be liquids and pureed food.

On March 25, 1980, LaRita, the mother, voluntarily admitted herself to the psychiatric unit of Memorial Medical Center in Springfield. She was diagnosed as a manic-depressive. She was treated in the hospital for one month, then released for weekly counseling at her community mental health center. By the time the hearing which resulted in this appeal proceeded to trial LaRita was responding to treatment through the use of lithium, a drug commonly used for mental disorders. Her doctor, Glen Pittman, testified that he desired to observe the effect of the drug for one full year before making any unqualified opinion as to the competency of the mother to care for the minor child.

Florence Mustard, the mother of LaRita, testified that her daughter had been hospitalized once in 1967 and periodically from 1972 through 1974 for depression. It was Mrs. Mustard's opinion that LaRita was capable of caring for Roberta.

During the dispositional hearing a social worker for the DCFS testified over the objection of LaRita's attorney as to neglect of the child by her mother from July 1978 to June 13, 1980. It was the recommendation of the social worker that guardianship of Roberta remain with the DCFS and that physical custody of Roberta be placed with the father, subject to status review in six months. As previously set forth, said recommendation became the order of the trial court.

It should be noted that at the dispositional hearing the mother, father, and a lifetime neighbor testified that with the maintenance of medication, LaRita was fit to raise her daughter, Roberta. LaRita, also testifying in her own behalf, expressed her desire and belief in her ability to raise her daughter.

A further recitation of the evidence adduced at the hearings will be set forth if the same becomes pertinent in determining the issues presented in this appeal.

The respondent, LaRita Calkins, argues that the adjudication of her neglect and unfitness and the order removing the child from her custody are not sustained by the evidence. The People argue that this issue has been waived by the respondent. We make no determination as to the waiver assertion, since we deem it preferable not to dispose of the neglect issue in this case on such grounds.

■■ It is argued by the respondent that the proof of neglect and an adjudication of unfitness must be established by more than the preponderance of evidence rule, but instead must be clear and convincing. We quarrel not with this assertion, having so held in the cases of *In re Dixon* (1980), 81 Ill. App. 3d 493, 401 N.E.2d 591, *In re Love* (1977), 50 Ill. App. 3d 1018, and *In re Hrusosky* (1976), 39 Ill. App. 3d 954, 351 N.E.2d 386. An examination of the record discloses that the proof in the instant case was clear and convincing and amply supports a finding of neglect on the part of the respondent. The proof clearly established that the respondent mother had a 14-year history of emotional problems. It is undisputed that she interfered with the minor's medical treatment after the child's third operation. The evidence supports a conclusion that the neglect of the minor can be attributed to the respondent's mental problems. Medical testimony was to the effect that medication may well stabilize and cure the mental problems of the respondent. The doctor treating the respondent, however, would not make an unqualified prognosis at the time of the hearing that the respondent was competent and capable of caring for her child. The doctor testified that he wanted to watch the effect of the drug lithium for one year before making any unqualified prognosis as to the respondent's competency. We can only conclude that the proof of neglect was clear and convincing and that the paramount question, to-wit, what is for the best interest of the child, mandated the trial court's order adjudicating the respondent to be an unfit parent because of neglect. (See *In re Stilley* (1977), 66 Ill. 2d 515, 363 N.E.2d 820.) We note with approval that the trial court provided for a status review of its dispositional order in six months.

■■ The respondent in this appeal strenuously argues that the People's proof of neglect is insufficient in that there was no proof that the minor was actually neglected or suffered harm. The respondent cites in support

of this argument the case of *In re Gates* (1978), 57 Ill. App. 3d 844, 373 N.E.2d 568. In *Gates*, the appellate court (Fifth District) held that a minor could not have been a neglected child during the period of time she was under the constant care of a hospital staff. The opinion, however, contains some revealing language that distinguishes the *Gates* situation from that in the instant case. The pertinent language is as follows:

> "* * * there was no evidence that the appellant *in any way interfered with or attempted to frustrate the efforts made to care properly for the medical needs of [the minor]*." (Emphasis added.) (57 Ill. App. 3d 844, 850, 373 N.E.2d 568, 573.)

We merely note that in the instant case the converse occurred.

The respondent's argument that a minor must be found to be actually neglected and not merely subject to neglect in the future does not reflect the law. We are cognizant of the rule that a court may not speculate as to the future of a child. (*In re Nyce* (1971), 131 Ill. App. 2d 481, 268 N.E. 233.) This rule, however, is tempered and qualified by the law as related in the case of *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872. The reviewing court in *Brooks* stated as follows:

> "It is true that a court may not speculate as to the future care of a child. However, it is also well-established that the primary consideration in a child-neglect case is the best interests and welfare of the child. [Citation.] When faced with evidence of prior abuse by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury." 63 Ill. App. 3d 328, 339, 379 N.E.2d 872, 881.

No useful purpose would be served by indulging in a further examination and recitation of the facts. No question was raised as to the stability of the minor's father; he expressly established his desire and ability to care for the needs of his daughter. The respondent admitted to a social worker that she had lied when she accused her former husband, Glen, of being guilty of sexual abberations. The respondent's parents also sought custody of the minor; however, the relationship between the respondent and her parents was not consistently good. It can only be concluded that the dispositional order entered by the trial court was supported by the evidence and is in accordance with the best interests of the minor.

■■ Respondent was represented by court-appointed counsel, as she was entitled to be. (Ill. Rev. Stat. 1979, ch. 37, par. 701—20(1).) The trial court, however, denied her request for payment of expert witness fees to her treating psychiatrist. The respondent attempts to equate the child neglect proceeding to a criminal case and assigns this denial as reversible error. We disagree, for there is no statutory authority for the payment of such fees. Further, the respondent had no need for the payment of such fees.

The respondent had the right to subpoena Dr. Pittman as a witness on her behalf since he was her treating psychiatrist. *People v. Hiera* (1980), 81 Ill. App. 3d 571, 402 N.E.2d 290.

Lastly, the respondent asserts that portions of a social investigation report were improperly admitted into evidence at the dispositional hearing. Specifically, it is her claim that her right to due process of law was violated by hearsay portions of the report which dealt with some prior difficulties she had experienced in caring for her child.

The respondent's brief concedes that the Juvenile Court Act relaxes the rules of evidence at a dispositional hearing. Section 5—1 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 705—1) provides:

"(1) After adjudging the minor a ward of the court, the court shall hear evidence on the question of the proper disposition best serving the interests of the minor and the public. All evidence helpful in determining this question, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing. * * *"

■■ The trial court was aware of the fact that portions of the social investigation report contained hearsay, but admitted the same and expressed its hope that the report would be properly weighed at the appropriate time. Respondent's concern over the hearsay portions of the report could have been alleviated by asking for an opportunity to controvert. Such a right was accorded to her pursuant to section 5—1(2). (Ill. Rev. Stat. 1979, ch. 37, par. 705—1(2).) By failing to avail herself of the right, the respondent should not now complain about hearsay. We prefer not to determine this issue solely on the grounds that respondent failed to avail herself of a statutory right. We prefer to further note that there is precedential authority for the admission of hearsay evidence in a dispositional proceeding. (See *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872; and *People ex rel. Jones v. Jones* (1976), 39 Ill. App. 3d 821, 350 N.E.2d 826.) No error was committed by the admission of the hearsay portions of the report.

For the reasons set forth the judgment of the Circuit Court of McDonough County as to wardship and custody of the minor, Roberta Jo Calkins, is affirmed.

Affirmed.

ALLOY and HEIPLE, JJ., concur.