107 Ill. App.3d 902 (1982)
438 N.E.2d 254
In re D.M.C., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
A.M. CONEKIN et al., Respondents-Appellants.)
No. 81-429.
Illinois Appellate Court  Fifth District.
Opinion filed July 23, 1982.
Raymond Lawler, P.C., of Marion, for appellants.
Robert Shuff, State's Attorney, of Mt. Vernon (Martin N. Ashley, of State's Attorneys Appellate Service Commission, and Robert C. Cook, research assistant, of counsel), for the People.
Judgment affirmed.
JUSTICE WELCH delivered the opinion of the court:
The minor child, D.M.C., was adjudicated neglected based upon his environment being injurious to his welfare with a further finding that he had been the victim of physical abuse by both parents. He was made a ward of the Juvenile Court and placed in the guardianship and custody of the Illinois Department of Children and Family Services (D.C.F.S.) and the child and parents were ordered to participate in counseling as a family unit. The parents appeal from the adjudication of neglect and abuse and from the disposition placing the child with D.C.F.S. We affirm the decision of the trial court.
D.M.C., a nine-year-old boy, was adjudicated neglected by reason of abuse following a three-day adjudicatory hearing on a juvenile court petition on April 23, 1981. Testimony indicated that D.M.C.'s parents had disciplined him by means of a leather belt, at least 50 strokes each and perhaps as many as 100 strokes each, administered to the boy's unclothed buttocks and rear and side thighs. Photographs introduced in evidence showed the entire area to be solidly bruised.
Testimony was introduced which indicated the child was hyperactive and perhaps had a learning disability "in the social behavior realm." *903 The parents are both professional psychologists and have educational training and professional experience in dealing with hyperactive and learning-disabled children. Testimony indicated that they believed he had a high threshhold of pain. The mother testified that she, the father, and the child all bruise easily and that she used the belt instead of her hand because she had bruised her hand spanking the child in the past.
The incident that triggered the punishment involved the boy's having taken his father's cowboy hat to school for "Show and Tell" without permission and then having lied to cover up. Testimony was conflicting regarding the communications between the teachers and authorities at school and the parents regarding the boy's misbehavior at school over the previous months.
The parents testified that they had "spanked" the boy before, usually a maximum of 10 or 12 strokes at a time but on other occasions they had delivered "quite a number of strikes with a belt."
On the day in question, the father testified that 10 or 12 strokes were not enough because "I wasn't getting any reaction. I wasn't getting any tears; I wasn't getting any yelling. When I stopped, he looked at me. It had no impact; nothing was happening."
The boy testified that on the day of the "spanking" he told his parents it was hurting but they didn't stop. He said he cried afterwards but not while they were hitting him with the belt. He said he really didn't know why, "it's just that it wouldn't come out."
The psychologist expert witness called by the State, who examined D.M.C. and administered a series of psychological tests to him, testified that in his professional opinion corporal punishment should never be used on hyperactive children, "because I feel it makes them more aggressive." He said that in his counseling of families he did recommend corporal punishment sometimes for flagrant violations of family rules. Even in those instances, however, he did not feel that 200 strokes with a belt was beneficial or appropriate punishment.
The psychologist expert witness called by the parents testified that she could understand the stresses and frustrations of living with a hyperactive learning-disabled child since she had such a child herself. When she was shown the photographs of D.M.C. she said, "I, as a professional, would not like to see a child who was whipped in this manner. I would immediately try to investigate some support and help for those parents and for the child, in terms of family therapy, working through the situation. I would also look and see if this has ever happened before."
There is no indication in the record that the court admonished the parents regarding their rights pursuant to section 1-20(3) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701-20(3)), at their first appearance *904 in court or subsequently. The parents were, however, vigorously represented by privately retained counsel at all stages of the proceedings.
At the shelter care hearing, held on April 1, 1981, the child testified that he was afraid to go home. The court, after hearing other testimony but not seeing the photographs which were not yet available, placed the child in the temporary custody of the Department of Children and Family Services pending the adjudicatory hearing.
At the close of the adjudicatory hearing the judge adjudicated the minor neglected by reason of physical abuse by both parents and made him a ward of the court. It ordered him continued in the temporary custody of the Department of Children and Family Services pending the dispositional hearing. It declined to hear testimony from the parents regarding their current attitudes toward corporal punishment and the state of the home environment prior to making the child a ward of the court.
Following a dispositional hearing and a hearing on a petition to establish fitness filed by the parents, the court placed the custody and guardianship of the child with the Department of Children and Family Services and ordered the family to attend counseling as a group. The court denied the parents' petition to establish fitness and ruled they were still "unfit" to have the child home. This was not, however, a finding of unfitness in an effort to terminate parental rights and place the child for adoption. That was not contemplated by the original petition or ever argued by the State. The court set the matter for review on December 18, 1981, with the stated aim of being able to return the child at that time if the counseling sessions indicated readiness on the part of the parents and the child.
The burden of proof which appellants have undertaken is to show that the trial court's decision was against the manifest weight of the evidence. (In re Stilley (1977), 66 Ill.2d 515, 363 N.E.2d 820). In this regard, it should be recalled that neglect "`is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes.'" In re Stilley (1977), 66 Ill.2d 515, 520, 363 N.E.2d 820, 822.
The petition alleged that D.M.C. was neglected, pursuant to section 2-4(1)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702-4(1)(b)), because his environment was injurious to his welfare, with specific allegations regarding the use of the belt by his parents and the bruises he received. The Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701-1 et seq.) does not define "environment injurious to welfare." As it read during the trial proceedings in this case, the Act did not define *905 "physical abuse," although section 4-8(2) requires the court, following an adjudication of neglect, to find whether the neglect was the result of physical abuse by the parents. (Ill. Rev. Stat. 1981, ch. 37, par. 704-8(2)). Recently, section 2-4 of the Act has been amended, and it now includes in the category of abused minors those children upon whom is inflicted "excessive corporal punishment." See Ill. Rev. Stat. 1981, ch. 37, par. 702-4(2)(a)(v).
Appellants urged that In re Aaronson (1978), 65 Ill. App.3d 729, 731-32, 382 N.E.2d 853, 855, should control this case and argue that "paddling one's own children cannot be the basis of a charge of child abuse and neglect in the absence of clear evidence the paddling was vicious or for other than disciplinary reasons." Aaronson referred to the United States Supreme Court decision upholding "paddling" of students in public schools as a means of maintaining school discipline and finding that it did not constitute cruel and unusual punishment in violation of the eighth amendment. The Supreme Court pointed out, however, that
"[t]o the extent that the force is excessive or unreasonable, the educator in virtually all States is subject to possible civil and criminal liability." Ingraham v. Wright (1977), 430 U.S. 651, 661, 51 L.Ed.2d 711, 724, 97 S.Ct. 1401, 1407; People v. Ball (1974), 58 Ill.2d 36, 317 N.E.2d 54.
The "paddling" or "spanking" in this case, as testimony by both expert witnesses indicated, rose to the level of "excessive corporal punishment." The judge did not abuse his discretion or decide against the manifest weight of the evidence in finding neglect based upon physical abuse by both parents.
Appellants further allege that the court committed reversible error by sustaining an objection to efforts by counsel for the parents to elicit testimony regarding the parents' current attitudes toward corporal punishment at the adjudicatory hearing prior to the court's making the child a ward of the court under section 4-8(2) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 704-8(2)). They cite the case of In re Driver (1977), 46 Ill. App.3d 574, 360 N.E.2d 1202. Driver was a delinquency case involving an altercation at a junior high school. Although the evidence was enough to establish that Driver was a delinquent minor under section 2-2, it was not sufficient for the court to make a determination of whether it was in the best interest of the minor and society that he be made a ward of the court under section 4-8(2), and therefore subject to placement outside his home as well as to supervision available under section 4-7. (Ill. Rev. Stat. 1975, ch. 37, pars. 702-2, 704-8(2), and 704-7.) For that reason Driver held that it was reversible error for the judge to refuse to hear proffered evidence bearing on the question of wardship. In the case before us, the evidence concerning *906 adjudication of D.M.C. as neglected by reason of abuse includes sufficient grounds for making the child a ward of the court and therefore subject to the entire range of dispositions available to the court. (Ill. Rev. Stat. 1981, ch. 37, par. 701-18). In fact, such a finding precludes returning the minor to the parents responsible for the abuse until a fitness hearing has been held. (Ill. Rev. Stat. 1981, ch. 37, par. 705-2(1)(c)). If the trial court erred in sustaining the objection, we find the error to be harmless since the finding of wardship has support in the record. In re Driver (1977), 46 Ill. App.3d 574, 578, 360 N.E.2d 1202, 1206.
Appellants also allege that the court committed reversible error in failing to advise the parents of the minor, at their first appearance or at a later appearance, of the nature of the proceedings and to inform the parties of their rights. Section 1-20(3) of the Juvenile Court Act (Ill. Rev. Stat. 1981, ch. 37, par. 701-20(3)) does direct the trial court to explain the nature of the proceedings to the parties at their first appearance before the court and to inform them of their rights under section 1-20(1) and (2). The record does not indicate that this was done in the instant case. Appellants point to In re Moore (1980), 87 Ill. App.3d 1117, 409 N.E.2d 435, for the proposition that such failure constituted reversible error, even though the parties were represented by counsel. The rights which the court must inform the parties of include the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and to be represented by counsel. In Moore, although the mother was represented by counsel she admitted the allegations of the petition regarding neglect and contested nothing. The reviewing court was concerned that the record did not indicate whether she knew she had a right to be heard and to present evidence material to the proceedings. For that reason it reversed and remanded the cause. In so doing it stated:
"While under the statute it is clearly error if the court fails to admonish the parents of their rights, it does not follow that such error would require reversal in every case." (In re Moore, 87 Ill. App.3d 1117, 1120, 409 N.E.2d 435, 437.)
In the case at bar the parents were represented vigorously from the first shelter care hearing by counsel. They testified, presented evidence material to the proceedings, cross-examined State witnesses, presented their own expert witness, had access to the predispositional evaluation, and took an appeal. They exercised to the full the rights they have. We cannot see that they were in any sense prejudiced by the court's failure to admonish them regarding their rights. Although error, we hold the court's failure to be harmless.
Appellants assert that the court's disposition, placing the child in the guardianship and custody of the Department of Children and Family *907 Services, was against the manifest weight of the evidence and, citing In re Butt (1979), 76 Ill. App.3d 587, 395 N.E.2d 1, should be reversed. The court in the present case heard testimony from a psychiatrist and psychologist who indicated D.M.C.'s problems were externally caused, not internal. They did not feel he was hyperactive and felt he did not need the drug Ritalin. All parties involved felt counseling, preferably including the whole family, was imperative to help get to the causes of the strapping incident. The parents testified that they had begun counseling and that their counselor would also see the child with them. The psychiatrist testified that he felt the parents would need counseling before the child should be returned home, and when he was returned the situation should be monitored very closely to detect any other blowups. The social worker for D.C.F.S. indicated that she thought close monitoring would be very difficult since the parents had not been cooperative in letting D.C.F.S. caseworkers into their house, and she suspected the child would not report any future incident of abuse because he was upset by all of the court action. The court heard testimony about the child's guilt feelings over the cost of foster care to his parents and his feeling that hearing of the juvenile court proceedings killed his grandfather, who was very ill at the time. The child testified that he would not report it even if he were spanked many times again. The court's disposition, keeping the child in the custody of D.C.F.S., giving the Department guardianship, ordering family counseling, and setting the matter for review with an eye to returning the child home within five months was not against the manifest weight of the evidence. Therefore we affirm the judgment of the circuit court of Jefferson County.
Affirmed.
KARNS, P.J., and JONES, J., concur.