*In re* P.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. P.W., Respondent-Appellee (Sadie W., Respondent-Appellant)).

First District (1st Division)   No. 87—2063

Opinion filed December 30, 1988.—Rehearing denied January 31, 1989.

Randolph N. Stone, Public Defender, of Chicago (James W. Younger, Jr., and Karen Tietz, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Nancy Nolan Colletti, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, of Office of the Public Guardian of Cook County, of Chicago (Susan Tone Pierce, of counsel), for other appellee.

JUSTICE QUINLAN delivered the opinion of the court:

On July 15, 1986, the circuit court of Cook County, Juvenile Division, declared P.W., a minor girl, to be a neglected child under the Juvenile Court Act, and P.W. became a ward of the court. (See Ill. Rev. Stat. 1985, ch. 37, par. 701–1 *et seq.*) In May 1987, P.W.'s father, John Wayne W., filed a petition seeking custody of P.W. After a hearing on the petition, at which counsel for all interested parties, as well as the parties themselves, were present, the circuit court of Cook County granted the petition of P.W.'s father and awarded him custody of P.W. under an order of protective supervision for six months.[1]

---

[1] At the time P.W.'s father sought custody of P.W., he was divorced from P.W.'s mother, Sadie W., and had remarried another woman, Louise W. Louise W. appeared and testified at the custody hearing on the father's petition. The order of the court, therefore, awarded custody of P.W. to both the father and Louise W.

P.W.'s mother, Sadie W., appeals the entry of that order, contending that the trial court lacked jurisdiction over the minor, P.W., and that the trial court denied her the opportunity to present her case when it refused to grant her a continuance. The State and P.W., through her guardian *ad litem*, have responded to her appeal. We affirm for the reasons set forth below.

The facts underlying the appeal are as follows. On April 29, 1985, the Illinois State's Attorney filed a petition for adjudication of wardship for P.W., a minor, in the circuit court of Cook County. On July 15, 1986, the court adjudged P.W. to be a neglected child, placed P.W. in the care of the Department of Children and Family Services (DCFS), and appointed a guardian *ad litem* to represent P.W. in all court-related proceedings.

Thereafter, on May 29, 1987, P.W.'s father filed a petition seeking custody of P.W. and, at the same time, he requested a hearing on the petition. Notice of the motion and the petition was sent to P.W.'s guardian *ad litem*; the DCFS, as P.W.'s guardian; counsel for P.W.'s mother, the public defender; and the Cook County State's Attorney. It appears from the record that all of these parties were served by mail, but there is no indication that the minor child, P.W., was individually served.

On July 9, 1987, the date set for the hearing on the petition, counsel for the State of Illinois, counsel for P.W., counsel for the father, and counsel for the mother were all present. Also present were P.W., the mother, and the father. At that time, counsel for the mother, an assistant public defender, requested a continuance of the hearing because she asserted that the mother had had no notice of the hearing, that the public defender's office did not have a copy of the petition in its file, that the assistant public defender who had appeared previously apparently did not recall receiving a copy of the petition, and that the assistant public defender who was familiar with the case and who had previously appeared could not be present at the hearing. However, the trial court found that counsel for the mother had been present at the last court date on June 1, 1987, when counsel for all interested parties had discussed the petition and the hearing date, and further found that because counsel for the mother was present on the prior date, the mother had notice of the hearing. Additionally, the trial court found that the public defender's office was properly served with a copy of the petition by mail. Consequently, the trial judge concluded that service on the mother was proper and denied her motion for a continuance. There was no objection at that time that the minor had not been properly served with notice.

After these preliminary matters were considered, the court proceeded to a hearing on the merits of the petition. At the hearing, the father presented the testimony of himself, P.W., Louise W., his present wife, Linda Willis, a DCFS worker assigned to P.W.'s case, and Brenton Diers, a social worker and P.W.'s therapist at the children's center where P.W. had been living for the past 16 months. All of the parties' attorneys were given the opportunity to cross-examine each of the witnesses. In his testimony, the father contended that he had never hit the children, and that although he had hit the mother, that only had occurred when they had been fighting. Additionally, his testimony established that he had remarried and taken steps to turn his life in the right direction. Both he and his new wife held full-time jobs and had arranged their work schedules to accommodate for the care of the minor, P.W., and her brother Jonathan,[2] and the father testified that he was also taking classes designed to aid him in becoming a better parent. The testimony at the hearing indicated that the court's prior custody determination which placed P.W.'s brother, Jonathan, in the custody of the father and his present wife was working out very well. In chambers and in the presence of counsel, P.W. testified that although she enjoyed seeing her mother, there were certain incidents, such as her mother's emotional outbursts, verified by other witnesses, that occurred during visits with her mother that upset and embarrassed her. She told the court that she wanted to live with her father. Further testimony established that P.W.'s visits with her mother were most beneficial when supervised because of the potentially harmful effect of her visits upon P.W.

After the father presented these witnesses, the mother testified and stated that the father had hit the children on various occasions. She also offered the written report of a clinical psychologist, Dr. Noll, who had evaluated the mother and concluded in her report that P.W. should eventually be returned to her mother's care. After the report was presented, the court allowed it to be admitted for whatever weight it might have. Thereafter, counsel for the mother again requested a continuance so that he could present the testimony of Ruth Gibson, a person the mother claimed could testify that she saw marks on the children approximately two years prior to the hearing date, allegedly due to the father's abuse.

The court denied that motion and then allowed counsel for each of the parties an opportunity to make closing remarks. Counsel for the

---

[2]Jonathan, P.W.'s younger brother, was placed in the custody of the father and his present wife, Louise W., prior to the time of the hearing on the petition in this case.

State, counsel for P.W. and counsel for the father all agreed that custody of P.W. should be awarded to her father and his present wife. Counsel for the mother argued that the mother wanted P.W. to remain at the children's center until she could obtain custody of P.W. herself. Following the arguments, the court ruled that it was in P.W.'s best interest that she be placed in the custody of her father and his present wife, under a six-month order of protective supervision. See Ill. Rev. Stat. 1985, ch. 37, par. 705—4.

The mother, as noted above, has raised two issues on appeal: whether the trial court lacked jurisdiction to grant custody of the minor, P.W., to her father under the protective order of supervision since the minor was never personally served with notice of the petition; and whether the trial court abused its discretion when it denied defense counsel's motion for a continuance of the hearing on the father's petition for custody.

The mother's first argument on appeal is that the trial court had no jurisdiction over the minor, P.W., based on her assertion that P.W. was not personally served with a copy of the summons and a copy of the father's petition, as required by section 4—3 of the Juvenile Court Act (the Act) (see Ill. Rev. Stat. 1985, ch. 37, par. 704—3) (amended by Pub. Act 84—1460, §1, eff. Jan. 12, 1987; amended by Pub. Act 85—720, §1, eff. Jan. 1, 1988).[3] Certain recent amendments to section 4—3 of the Act relevant to this appeal have given rise to judicial debate regarding the retroactive application of the amendments, as well as the procedural requirements thereunder and, thus, an examination of these amendments is necessary for resolution of the issue presented here.

Section 4—3 of the Act defines the required procedure for service of summons in cases involving juveniles. The Act, prior to 1987, provided that when a petition for a hearing pursuant to the Act was filed, the summons had to be directed to the minor and each person named as a respondent. (See Ill. Rev. Stat. 1983, ch. 37, par. 704—3.) The section was originally amended, effective January 12, 1987, to require that the summons be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition. (Ill. Rev. Stat. 1985, ch. 37, par. 704—3.) After this amendment, the legislature once again amended the section, effective January 1, 1988,

---

[3]Public Act 85—601 repealed the Juvenile Court Act enacted in 1965 and adopted the Juvenile Court Act of 1987, effective January 1, 1988. (See Ill. Rev. Stat. 1987, ch. 37, par. 801—1 et seq. (Pub. Act 84—601).) The prior Act and its subsequent amendments are pertinent to this appeal because the petition was brought while the prior Act was still in effect.

to provide that a summons need not be directed to a minor respondent under eight years of age, if the minor was represented by a court-appointed guardian who appeared on behalf of the minor under the provisions of the Act. Ill. Rev. Stat. 1987, ch. 37, par. 704—3 (as amended).[4]

The mother, on appeal, argues that the 1988 amendment is the proper section to be applied in this case. Under that amendment, she asserts that P.W. should have been personally served with notice of the hearing on the petition and a copy of the petition. That requirement was not satisfied, she contends, because the notice was only served upon P.W.'s guardian *ad litem*. If notice and a copy of the petition were never served on P.W. personally, as required under section 4—3, she concludes, the court had no jurisdiction over P.W., and all orders of the court affecting her interests, and, specifically, the order placing P.W. in her father's custody, are void.

The State, on the other hand, argues that the trial court had proper jurisdiction over P.W. because the 1988 amendment should not be given retroactive effect, and the more lenient 1987 amendment should apply. The State implies that our supreme court's decision in *In re Pronger* (1987), 118 Ill. 2d 512, 517 N.E.2d 1076, favored the less restrictive view found in the 1987 amendment, and that because the 1988 amendment was more restrictive, it should only be given prospective application, *i.e.*, it should not be applied to this case. (*In re Pronger* (1987), 118 Ill. 2d 512, 517 N.E.2d 1076.) P.W.'s guardian *ad litem*, like the State, argues that the trial court had jurisdiction over the minor, P.W., but relies upon a different analysis, arguing that even if the law required P.W. to be personally served with summons, there was a sufficient basis for the court to invoke jurisdiction over P.W. here because she was represented by counsel and she was present and participated in the proceedings. See *In re D.S.* (1988), 168 Ill. App. 3d 76, 522 N.E.2d 625, *appeal denied* (1988), 121 Ill. 2d 570, 526 N.E.2d 828.

We have recently decided this issue in *In re R.W.* (1988), 176 Ill. App. 3d 868. There, we retroactively applied the 1988 amendment but held that the legislature did not intend the 1988 amendment to require personal service on minors over eight years of age for purposes of jurisdiction. In *R.W.*, we examined the legislative history and intent

---

[4]Section 2—15 of the new Juvenile Court Act of 1987, which is not applicable to this appeal, provides that service of summons on a minor in a juvenile action be made upon the minor's legal guardian or custodian, regardless of the minor's age. Ill. Rev. Stat. 1987, ch. 37, par. 802—15.

of section 4—3 and its amendments ·at great length to determine whether the 1988 amendment actually required personal service on minors. After a thorough review of the House debates on the amendments to the section, we found that "there [was] absolutely no indication in the debates that the legislature believed that any purpose would be accomplished by requiring service of process, as a matter of jurisdiction, on minors who were older than infants, *viz*, those eight years and older." (*R.W.*, 176 Ill. App. 3d at 874.) Additionally, we found no reason for such a procedure in cases where the minor is properly represented by a guardian *ad litem* throughout the proceedings. (*R.W.*, 176 Ill. App. 3d at 873.) Based upon these findings, and the rationale underlying our supreme court's decision in *In re Pronger*, which was decided under the 1987 amendment, we concluded that because a guardian *ad litem* was appointed in *R.W.* and appeared for the minor, and because the minor had notice and initially appeared in the proceeding, the court had jurisdiction to make a determination as to parental rights, despite the fact that the minor was not personally served. (*R.W.*, 176 Ill. App. 3d at 873-74; see *In re Pronger* (1987), 118 Ill. 2d 512, 517 N.E.2d 1076.) Moreover, we noted that there had been no showing that any substantial rights of the minor were prejudiced due to the failure to personally serve the minor, and that no useful purpose would be served by remanding the matter. *R.W.*, 176 Ill. App. 3d at 875; see also *In re S.B.* (1988), 176 Ill. App. 3d 43.

■ Our analysis in *R.W.* of the 1988 amendment is also applicable to the facts presented here. Here, although P.W. was not personally served with notice, her court-appointed guardian *ad litem* was served with notice. P.W.'s guardian *ad litem* represented her throughout the proceedings, and P.W. herself was present throughout the hearing; P.W. even testified at the hearing. Therefore, under the 1988 amendment, the trial court's jurisdiction was properly invoked here when service was made upon P.W.'s guardian *ad litem*.

■ Moreover, just as in *R.W.*, there has been no allegation or showing of prejudice here to any substantial interests of the minor and, hence, no useful purpose would be served in this case either by remanding this matter for additional notice and additional proceedings. (See *R.W.*, 176 Ill. App. 3d at 874-75.) While we are ever mindful of the strong policy to protect minors in proceedings affecting their most basic needs and rights, it is clear that P.W.'s interests were more than adequately represented and protected in the proceedings below. Any other decision would merely require that the very same proceeding be had again, when each party's due process rights had

been adequately considered in the first proceeding. Such a result would merely grant the mother a second chance to present her case when it was not even her rights that were allegedly compromised. We do not find such a result either warranted or equitable.

▇ The mother next contends that the trial court abused its discretion when it denied her motion for a continuance of the hearing date. The decision to grant a motion for a continuance when a material witness is unavailable lies within the sound discretion of the trial court and must be examined in light of the particular facts and circumstances of each case. (*People v. Petrovic* (1982), 102 Ill. App. 3d 282, 288, 430 N.E.2d 6, 11.) A reviewing court must look to whether the court's failure to grant a continuance impeded preparation of the party's defense or prejudiced the party's rights. *Petrovic*, 102 Ill. App. 3d at 288, 430 N.E.2d at 11.

The mother argues that the court's refusal to grant the motion for a continuance here prejudiced her rights, was an abuse of discretion, and denied her effective assistance of counsel since her counsel had to proceed unprepared. She further claims that the court's denial of the motion prevented her from presenting the testimony of Dr. Katherine Noll, a clinical psychologist who recommended that P.W. be returned to her mother's care, and Ruth Gibson, a person who allegedly saw marks on P.W. inflicted by the father.

The State and P.W.'s guardian *ad litem* contend that there was no abuse of discretion here. The trial court properly found that the mother's representative knew of the hearing date on the petition and was, in fact, present at the prior court call. Additionally, no offer of proof was made concerning any additional testimony that might have been provided by the witnesses, nor were any affidavits offered regarding the nature of the additional testimony or to demonstrate in what way counsel was unprepared. Furthermore, the State and P.W.'s guardian *ad litem* both contend that the mother has not shown how she was prejudiced by the court's action since all of the information was, in any event, presented to the court.[5] Finally, they argue that even if the trial court did err by denying the motion, the error was harmless.

▇ We agree with the State and P.W.'s guardian's analysis. The record shows that notice of the motion for a hearing on the petition and a copy of the petition were sent to the public defender's office. In addition, the trial court specifically found that the assistant public de-

---

[5]Dr. Noll's report was admitted into evidence by the trial court, for whatever weight it might have, and P.W.'s mother, Sadie W., testified regarding what Ruth Gibson had allegedly observed.

fender, representing the mother, was present in court on June 1, 1987, as were the other parties' representatives, and, on that date, the hearing and petition were discussed. Moreover, on appeal, counsel for the mother stated that the assistant public defender who had previously appeared for her, and the assistant public defender who was present at the hearing, had worked together. Further, even if the trial court erred in denying the mother's motion, which we do not believe it did, any error which occurred was harmless. The mother cannot show how her rights were prejudiced by the failure to present the testimony of Dr. Noll and Ruth Gibson. There were, as observed above, no affidavits submitted and no offers of proof made regarding any alleged testimony that might have been offered at a later time. (See *Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 504 N.E.2d 781, *appeal denied* (1987), 115 Ill. 2d 541, 511 N.E.2d 428.) There was absolutely no indication either at the hearing or in argument on appeal that Ms. Gibson would testify that the father injured the children; at best, based on the mother's testimony at the hearing, Ms. Gibson could testify that she saw marks on the children from some type of injury more than two years prior to the hearing date. As for Dr. Noll, her report was admitted in evidence before the trial court and considered by the trial court in its ruling. Finally, we note that the order entered here provided that the father be awarded custody of P.W. under protective supervision. Moreover, it was not a permanent award of custody, and the court may review the situation after the term of the order has expired, in six months. Accordingly, under these circumstances, we find that no abuse of discretion occurred in the trial court.

For all of the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.