*In re* L.M. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. English M., Respondent-Appellant).

First District (2nd Division)   No. 1—86—1920

Opinion filed September 26, 1989.

Paul P. Biebel, Jr., Public Defender, of Chicago (Sharon Shapiro and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Lynda A. Peters, and Clarke Devereux, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

After a juvenile court adjudicatory hearing, the circuit court found that respondent, English M., had abused and neglected her two minor sons, L.M. and D.M. At the dispositional hearing, the circuit court made L.M. and D.M. wards of the court; vacated a temporary custody order; and appointed as guardian Walter M., their father. Respondent appeals from this order contending that the circuit court erred because it: (1) lacked jurisdiction over L.M. and D.M.; (2) improperly found that respondent used excessive corporal punishment; (3) improperly admitted hearsay testimony concerning a psychological report during the dispositional hearing; (4) improperly found that respondent was an unfit parent; and (5) improperly ordered the termination of respondent's unsupervised visits with her sons.

Respondent and her husband had two sons, L.M. and D.M. In 1984, when L.M. was seven years old and D.M. was nine years old, respondent had been separated from her husband for approximately three years. On Saturday, March 24, 1984, L.M. and D.M. left home in the morning to play and did not return until late in the evening. Respondent stated that on this date she looked for her sons while en route to the currency exchange and to the gas station, but could not find them.

The next day, in the early morning, their father saw the boys in the front yard of a friend's house. They stayed with their father most of the day, and before nightfall went back to respondent's home, 2½ blocks away, but were unable to gain access. The boys returned to their father's home and, at approximately 9 p.m., he accompanied them to respondent's house, where he knocked several times and then pounded on the door with a rock, but there was no answer.

After several phone calls and an unsuccessful attempt by respondent's brother to gain access to the house, L.M. and D.M. stayed the night with their father. That evening, their father gave the boys a bath and washed their hair "so they wouldn't have to go to school

smelling like urine." For some time the boys had been dirty. Their father recalled that the Parent-Teacher Association president had spoken with him, requesting that he contact respondent about the condition of the boys. While washing the younger boy, L.M., his father noticed five "whip marks" across his back.

The father described the marks on L.M.'s back as 6 to 10 inches long, going diagonally in different directions. The marks had become pink-fleshy lines after the scabs that had initially formed had fallen off. In response to his father's questions about how he had gotten the marks, L.M. said that he had been whipped with a belt and a stick by respondent because he had been playing ball in the house. D.M. told his father that respondent had also struck him.

Because the boys had colds, their father took them to Michael Reese Hospital, where they were examined by Dr. Berman, who diagnosed the colds, noted the marks across L.M.'s back, and told their father that they were caused by being whipped. After L.M. confirmed he had been whipped, Dr. Berman telephoned the hotline for child abuse and neglect of the Illinois Department of Children and Family Services (DCFS) and reported that respondent had struck L.M. with a belt and had left the boys unsupervised.

DCFS filed petitions for adjudication of wardship which alleged that respondent abused and neglected the two boys, in violation of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, pars. 702—4(1)(a), (2)(a), (2)(b)).

On April 3, 1984, a guardian *ad litem* having been appointed to represent L.M. and D.M., a probable cause hearing was held. Marlon Daniels, a DCFS employee, testified that on March 27, 1984, he had visited the boys' elementary school and had spoken with L.M. and D.M. about being left unsupervised by their mother. Daniels had examined L.M. and discovered five whip marks on his back. He recommended that the boys remain in foster care placement until respondent, their father, and a service worker for DCFS could determine a service plan for the return of the boys to respondent. The circuit court found that there was probable cause and an urgent and immediate necessity for foster care of L.M. and D.M., and therefore, appointed DCFS as their temporary custodian.

On March 14, 1986, an abuse and neglect proceeding was held before the circuit court. The State called the boys' father and a DCFS social worker, Stephen English. Their testimony established that respondent had left her sons unsupervised and that L.M. had whip marks on his back. English further testified that at a meeting with respondent and Charles Hays, a staff-therapist at the Mid-South Men-

tal Health Center, respondent admitted she had disciplined the boys with a belt. Respondent testified that she had not punished the boys by whipping them and that she had not used excessive corporal punishment on them. At the conclusion of the hearing, the circuit court made a finding of abuse of L.M. due to excessive corporal punishment and also found neglect and abuse of both L.M. and D.M. based on respondent's lack of care for them and the creation of an environment injurious to their welfare. The court ordered that respondent be psychologically evaluated prior to the dispositional hearing.

On June 12, 1986, the dispositional hearing was held. At this hearing, the State again called Stephen English, who testified that in 1984, following the earlier hearing, DCFS had arranged a service plan for respondent. The service plan was structured so that respondent would see a therapist at Mid-South Mental Health Center, be involved with a parenting support group center, and enjoy weekly unsupervised visits with L.M. and D.M. Respondent expressed dissatisfaction with her therapist and, although English told respondent that he would arrange for a new therapist and did change therapists for her the next week, respondent failed to attend the sessions until three months later, and then was erratic in her attendance. Respondent's visits with her children were also erratic, the last visit having been three weeks before the hearing.

English further testified that a Dr. Simms interviewed and psychologically evaluated respondent. The psychological report concluded that respondent had emotional problems that she acted out aggressively but did not realize she was doing so. Dr. Simms felt that respondent needed long-term psychotherapy and possibly needed medication. Dr. Simms recommended that respondent not be given custody of L.M. and D.M.

English also testified that both boys individually told him that they wanted to be placed with their father. English recommended that the boys be placed in the custody of their father, whose house he had found to be suitable for younger children. He based his recommendations on respondent's inconsistent compliance with the DCFS service plan and the psychological report of Dr. Simms. Moreover, respondent still refused to admit that any abuse of the boys had occurred and exhibited no remorse as to what had happened to the boys. English was also concerned that Dr. Simms felt that respondent would abuse L.M. and D.M. again.

Respondent testified that she attended counseling for six months every Monday at 1 p.m.; she saw a psychologist and a doctor at Cook County Hospital; however, she could not recall the name of the doc-

tor; she did not punish the boys by whipping them; and she told Dr. Simms that the lashes across L.M.'s back were from the two boys fighting and that reports of her conduct had been exaggerated.

After closing arguments, the circuit court noted that respondent had not substantially complied with the DCFS service plan. Moreover, the circuit court stated that the psychological report by Dr. Simms that L.M. and D.M. should be removed from respondent's custody was controlling evidence in this case. The circuit court held that it was in the best interest of the minors that they be adjudged wards of the court and that their father be appointed guardian. The written order also terminated respondent's unsupervised visits with L.M. and D.M. without prejudice.

I

The record does not indicate that the boys were served with a summons or a copy of the petition as required by section 2—15 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 802—15). Respondent argues that because L.M. and D.M. were not served with a summons and a copy of the petition, the orders entered at the dispositional hearing are void for want of jurisdiction. We do not agree.

Where a minor has notice, appears at a proceeding, and is properly represented by a guardian *ad litem* throughout the proceedings, personal service is unnecessary. (*In re P.W.* (1988), 178 Ill. App. 3d 522, 528, 533 N.E.2d 922; *In re R.W.* (1988), 176 Ill. App. 3d 868, 874-75, 531 N.E.2d 294.) Where a parent has appeared and participated in all proceedings before the circuit court, and does not object to jurisdiction, she has waived the formality of service of process and voluntarily submits to the jurisdiction of the court. (*In re J.W.* (1981), 87 Ill. 2d 56, 429 N.E.2d 501; *In re T.A.* (1989), 181 Ill. App. 3d 1034, 537 N.E.2d 1118.) Furthermore, where there is no showing that any substantial interest of the minor was prejudiced by failure to obtain personal service on the minor, the court's decision is not void for lack of jurisdiction. *In re Pronger* (1987), 118 Ill. 2d 512, 524, 517 N.E.2d 1076; *In re P.W.* (1988), 178 Ill. App. 3d 522, 528, 533 N.E.2d 922; *In re R.W.* (1988), 176 Ill. App. 3d 868, 874-75, 531 N.E.2d 294.

Here, respondent never objected to jurisdiction and has therefore waived any objections as to the court's jurisdiction over L.M. and D.M. (*In re J.W.*, 87 Ill. 2d 56, 429 N.E.2d 501; *In re T.A.*, 181 Ill. App. 3d 1034, 537 N.E.2d 1118.) Furthermore, a guardian *ad litem* represented L.M. and D.M. at all court proceedings; they appeared at several court hearings but were removed from the courtroom during testimony; and there has been no allegation or showing of prejudice

regarding any of their interests. Therefore, no useful purpose would be served by remanding for additional notice and additional proceedings. *In re P.W.*, 178 Ill. App. 3d 522, 533 N.E.2d 922; *In re R.W.*, 176 Ill. App. 3d 868, 531 N.E.2d 294.

## II

Respondent contends that there was no evidence presented that she improperly used a belt to whip her children. Alternatively, she maintains that it was not clearly established that a belt was used in a vicious manner or for other than disciplinary reasons, and that, in any event, using a belt on one's own children cannot be the basis for a finding of child abuse. We disagree.

■ The petition alleged that respondent used excessive corporal punishment by whipping L.M. with a belt. (Ill. Rev. Stat. 1983, ch. 37, par. 702—4(2)(a)(v).) Although the Juvenile Court Act does not define "excessive corporal punishment" and each circumstance is unique (*In re Stilley* (1977), 66 Ill. 2d 515, 520, 363 N.E.2d 820), it has been held to be unreasonable conduct to spank a child with one of the child's belts so that some of the blows fall upon the child's back and chest (*People v. Swanson* (1980), 84 Ill. App. 3d 245, 405 N.E.2d 483), and to hit a child with an extension cord (*People v. Reynolds* (1980), 91 Ill. App. 3d 683, 685, 415 N.E.2d 685). Moreover, it has been determined to be excessive corporal punishment for a parent to whip his son twice with an extension cord (*People v. Johnson* (1985), 133 Ill. App. 3d 881, 884, 479 N.E.2d 481), and to paddle or spank a nine-year-old boy with a leather belt on his unclothed buttocks (*In re D.M.C.* (1982), 107 Ill. App. 3d 902, 905, 438 N.E.2d 254).

Here, testimony by Stephen English and the boys' father established that the whipping by respondent of her seven-year-old son with a belt was vicious and unreasonable and exceeded the bounds of proper parental force (*People v. Johnson*, 133 Ill. App. 3d 881, 479 N.E.2d 481; *People v. Swanson*, 84 Ill. App. 245, 405 N.E.2d 483), and therefore, constituted excessive corporal punishment. (*In re D.M.C.* (1982), 107 Ill. App. 3d 902, 905, 438 N.E.2d 254.) Moreover, during consultations with a therapist and a DCFS social worker, respondent had admitted to whipping the boys with a belt. That testimony corroborated L.M.'s recitation of excessive whippings. *In re D.P.* (1988), 176 Ill. App. 3d 456, 531 N.E.2d 162.

Respondent erroneously relies upon *In re Aaronson* (1978), 65 Ill. App. 3d 729, 731-32, 382 N.E.2d 853, as support for her argument that using a belt on her own children cannot be the basis of a finding of child abuse in the absence of clear evidence that the striking was

vicious or for other than disciplinary purposes. *Aaronson* is distinguishable in that there the evidence failed to establish excessive, unreasonable, or vicious punishment. *In re Aaronson* (1978), 65 Ill. App. 3d 729, 731-32, 382 N.E.2d 853.

■ Here, the circuit court's findings were not against the manifest weight of the evidence. (*In re D.M.C.* (1982), 107 Ill. App. 3d 902, 905, 438 N.E.2d 254.) Because the trial court must have broad discretion in determining the existence of neglect and abuse (*In re Stilley* (1977), 66 Ill. 2d 515, 520, 363 N.E.2d 820), there was no abuse of discretion where a whipping, as in this case, left permanent scars on a seven-year-old's back.

### III

Respondent asserts that the circuit court erred when it received into evidence, without proper foundation and authentication and over objection, a document alleged to be a psychological evaluation concerning respondent. She contends that the document was inadmissible hearsay since Dr. Simms, the psychologist who prepared the evaluation, was not present in court or subject to cross-examination.

In support of her argument, respondent refers to the section of the Juvenile Court Act which provides the proper procedure for establishing a foundational basis and authenticity for admitting written records of a hospital or a public or private agency. (Ill. Rev. Stat. 1985, ch. 37, par. 704—6(4)(a).) However, respondent cites the section which refers to the procedures necessary to admit evidence at the adjudicatory hearing; here, the report was admitted at the dispositional hearing.

■ The propriety of the admission of the psychological report by Dr. Simms at the dispositional hearing, following the finding of neglect and abuse of L.M. and D.M. several months prior, is controlled by section 5—1(1) of the Juvenile Court Act, the pertinent part of which reads as follows:

> "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, if he is to be made a ward of the court, the court shall determine the proper disposition best serving the interests of the minor and the public. *All evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 37, par. 705—1(1).

■ This section of the Act plainly provides that the circuit court should consider all reports, whether or not the author testifies, which would assist the court in determining the proper disposition for the minor. (*In re Smith* (1975), 33 Ill. App. 3d 354, 356, 337 N.E.2d 109.) Concerns over the hearsay portions of the report may be alleviated by asking for the opportunity to controvert the report pursuant to the provisions of section 5—1(2) of the Juvenile Court Act. (*In re Calkins* (1981), 96 Ill. App. 3d 74, 78, 420 N.E.2d 861.) Since a psychological report may be admitted in evidence at a dispositional hearing even if it is hearsay evidence (*In re Calkins* (1981), 96 Ill. App. 3d 74, 78, 420 N.E.2d 861; *In re Smith* (1975), 33 Ill. App. 3d 354, 356, 337 N.E.2d 109), the report admitted in this case was properly admitted.

## IV

Respondent argues it was arbitrary and against the manifest weight of the evidence for the circuit court to find that it was in the best interests of the boys that they be adjudged wards of the court, that she was unwilling to care for the boys, and that the service plan had not been successfully completed by her. We do not agree.

■ Under the Juvenile Court Act, when the court finds that a parent is unable or unwilling to care for her child, that remedial services have been ineffective, and that it is in the best interests of the child to be taken from the parent, the child may be placed under the guardianship of another. (Ill. Rev. Stat. 1985, ch. 37, pars. 705—7(1)(a), (3).) A reviewing court should not reverse a trial court's determination of parental unfitness unless it is palpably erroneous and contrary to the manifest weight of the evidence (*In re Hillyer* (1980), 82 Ill. App. 3d 505, 510, 403 N.E.2d 36), or an abuse of discretion. *In re Nitz* (1979), 76 Ill. App. 3d 15, 394 N.E.2d 887; *In re Prough* (1978), 61 Ill. App. 3d 227, 376 N.E.2d 1078.

■ The unfitness of a parent may be proven by clear and convincing evidence that her efforts to visit her children were "half-hearted and easily abandoned" and that she lacked any commitment necessary to complete a service plan. (*In re T.R.* (1985), 135 Ill. App. 3d 1017, 482 N.E.2d 372.) Evidence that a parent's compliance with a service plan were "very sporadic" or that she failed to participate in a service plan and was unfit are sufficient to show that she failed to maintain a reasonable degree of interest, concern, or responsibility for the welfare of her children. See *In re T.R.* (1985), 135 Ill. App. 3d 1017, 1022, 482 N.E.2d 372; *In re Hillyer* (1980), 82 Ill. App. 3d 505, 509, 403 N.E.2d 36.

■ In the instant case, respondent did not participate in her ser-

vice plan on a consistent basis. She complained about her therapist, and when that therapist was changed, she failed to see the replacement for three months. Nor did she regularly visit her children. Moreover, Stephen English, the DCFS social worker, in recommending against the boys' placement with their mother, testified about respondent's unfitness and her lack of commitment to complete the terms of the service plan.

The evidence in this case established that respondent often ignored her children and let them roam for long periods without knowing their whereabouts. Although she claimed to search for them during her other errands, the evidence showed that respondent did not make the home accessible to them or provide their basic nourishment or assist in their hygiene. Shelter, food, and cleanliness are necessary for the welfare of children. The whip marks across L.M.'s back were additional evidence which the circuit court correctly considered in making its finding.

Respondent argues that testimony in the record showed that she visited the children and that the paternal grandmother and a DCFS worker had said that the visits went well. The testimony to which respondent refers occurred in 1984, two years prior to the adjudicatory and dispositional hearings. That testimony was not that the visits were going well, but that the grandmother "had no problems" with the visits. When the evidence is considered in proper context, it shows that respondent lacked the necessary parental commitment and it was therefore proper to terminate her parental rights.

Additionally, there is evidence of a warm relationship between L.M. and D.M. and their father. The boys stated they wanted to live with their father. The record reveals a father who is committed to his sons in incurring expense, in rearranging his military duties so that he could participate in all court proceedings, and in arranging for his military assignment to be transferred so that he could actively care for them. The circuit court did not abuse its discretion when it appointed the father as guardian. We cannot say that the court's determinations were palpably erroneous (*In re Hillyer*, 82 Ill. App. 3d 505, 403 N.E.2d 36) or against the manifest weight of the evidence. *In re T.R.*, 135 Ill. App. 3d 1017, 482 N.E.2d 372.

## V

Respondent argues that the order terminating her unsupervised visits without prejudice must be vacated because there is no mention of it in the transcripts. Respondent cites no authority for this position.

■■ Supreme Court Rule 321, in pertinent part, provides that there is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court. (107 Ill. 2d R. 321.) Additionally, the common law record imports verity and is presumed correct, but where other facts appear contrary to the record, the court should consider the record as a whole. *People v. Williams* (1963), 27 Ill. 2d 327, 189 N.E.2d 314.

In *People v. Bowers* (1972), 4 Ill. App. 3d 453, 456, 280 N.E.2d 784, the court examined the docket clerk's entry of judgment which recited the trial court's orders although the transcript omitted them. The court held that based on Rule 321 and the representation of defendant by counsel, the common law record containing a recitation of the court's admonition to a defendant entering a plea of guilty was sufficient. *People v. Bowers* (1972), 4 Ill. App. 3d 453, 456, 280 N.E.2d 784, citing *People v. Stack* (1945), 391 Ill. 15, 62 N.E.2d 807.

■■ Here, the transcript reflects: testimony that respondent might again harm her children and not realize that she was doing so; that the circuit court noted the possibility of such danger; respondent's representation by legal counsel; and the notation on the docket folder by the docket clerk that the disposition was that the father was to have custody and that unsupervised visits by respondent were to be terminated. The record viewed as a whole (*People v. Williams*, 27 Ill. 2d 327, 189 N.E.2d 314) dispels any alleged error caused by the disposition not being transcribed. *People v. Bowers* (1972), 4 Ill. App. 3d 453, 457, 280 N.E.2d 784.

For the foregoing reasons the circuit court's findings and orders are affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.