*In re* J.S., Alleged to be a Neglected Minor (The People of the State of Illinois, Petitioner-Appellee, v. Laurie Sexton, Respondent-Appellant).

Fourth District No. 4—86—0405

Opinion filed January 26, 1987.—Rehearing denied February 23, 1987.

Alan J. Novick, of Jennings, Novick & Eggan, P.C., of Bloomington, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Elizabeth A. Robb, of Bloomington, guardian *ad litem.*

JUSTICE LUND delivered the opinion of the court:

Respondent, Laurie Sexton, appeals from the dispositional order of the circuit court of McLean County pertaining to her son, the minor, J.S. The court ordered the guardianship of J.S., previously adjudicated a neglected child, transferred to the Department of Children and Family Services (DCFS) with authority to place the minor outside the home pursuant to section 5—7 of the Juvenile Court Act (the Act) (Ill. Rev. Stat. 1985, ch. 37, par. 705—7).

On March 11, 1986, a petition for adjudication of the wardship of J.S. was filed alleging that he was neglected. J.S. was born on July 15, 1985, and was approximately eight months old at the time of the petition. A shelter care hearing was also held on March 11 pursuant to section 3—6 of the Act. (Ill. Rev. Stat. 1985, ch. 37, par. 703—6.) At that hearing, a DCFS worker described injuries sustained by the child. The examining physicians did not testify. The court found probable cause to sustain the allegations of the petition and, further, found it a matter of urgent and immediate necessity to place the minor in shelter care.

An adjudicatory hearing was subsequently held. No evidence was taken at this hearing, as the respondent stipulated that the petition would be proved. The court issued an order finding J.S. neglected by reason of physical abuse.

At the dispositional hearing, the State's only evidence consisted of the DCFS dispositional report. In the report, the nature and severity of the minor's injuries were described. Just prior to the filing of the petition, the minor had been admitted to a hospital with a massive skull fracture with bruises and swelling of about 15 centimeters in diameter on the right side of his head and face. There were bruises on his chest, stomach, pelvis and back, and other injuries. In addition, X rays showed old fractures of varying ages on the minor's ribs and right leg. Respondent reported the injuries occurred when her boyfriend, left alone with the minor for a short period, dropped the minor while playing, and the child's head hit an iron bed rail. She could not give an explanation for the old fractures but indicated that she had observed her boyfriend swinging the minor by his legs.

The report discussed respondent's background. Respondent was

abused by her mother while growing up. She dropped out of school but returned to receive a GED degree in 1982. She further completed nurse's training in 1986.

In meetings between the DCFS social worker and respondent, respondent supplied contradictory explanations about the bruising to J.S. The social worker also met with respondent's boyfriend, Rick Shelton. He reiterated the statement that the minor was hurt in a fall while he was playing with the child.

The report recommended that J.S. be placed outside the home. It found respondent's abilities as a mother to be sound and her attitudes caring. Yet, she had difficulty facing the possibility that Rick Shelton had abused J.S. It was the social workers' opinion that this denial impaired respondent's ability to protect her son. Also, the fact that she had been abused as a child worked to desensitize her to signs of abuse. Respondent and Shelton were planning on getting married, and, in fact, respondent was pregnant with Shelton's child.

Respondent called two witnesses, in addition to testifying herself, at the dispositional hearing. Both witnesses, a longtime friend and a neighbor, testified to respondent's abilities as a mother. They both stated that respondent placed her children before any romantic relationships.

Respondent testified that she wants her son back. She stated that it was Rick who abused the child, and she was willing to request and to abide by an order of protection against Shelton. Her marriage plans were contingent on the outcome of criminal charges filed against Shelton in this same matter. She further stated she was willing to attend counseling and had attended one session.

The court ordered the transfer of guardianship to the DCFS with authority to place. The court reasoned that the close relationship between respondent and Shelton resembled a marital relationship such that the abuse should be viewed as committed by a father figure living in the same household as the abused child. Until such time as the home situation stabilized, the court continued, the child should not be returned to the home. If Shelton were to become a permanent part of the respondent's family, it would be imperative that he have counseling prior to a return of the child. The court emphasized the temporary nature of its order.

On appeal, respondent raises one argument: the trial court erred in transferring custody from respondent to the DCFS, as the standards enunciated in section 5—7 of the Act (Ill. Rev. Stat. 1985, ch. 37, par. 705—7) were not met. That section reads, in pertinent part, as follows:

"If the court finds that the parents, guardian or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that appropriate services aimed at family preservation and family reunification have been unsuccessful in rectifying the conditions which have led to such a finding of unfitness or inability to care for, protect, train or discipline the minor, and that it is in the best interest of the minor to take him from the custody of his parents, guardian or custodian, the court may

\* \* \*

(f) in the case of a neglected or dependent minor under 18 years of age adjudged a ward of the court under Section 2—4 or 2—5, commit him to the Department of Children and Family Services for care and service." Ill. Rev. Stat. 1985, ch. 37, par. 705—7.

Respondent essentially divides the above-quoted statute into three segments. She argues the court must have evidence on all three segments before it may remove the child from the parental home. In order to remove a child, according to respondent, the court must find (1) that the parents are unfit or unable for reasons other than financial circumstances alone to properly care for the child, (2) that appropriate services aimed at preserving the family unit and rectifying the unsatisfactory conditions have been unsuccessful, and (3) that it is in the best interests of the minor that he be removed.

● 1, 2 Preliminarily, we make two observations. With regard to the function of the trial court to make the proper disposition, the choice of dispositional order rests within the sound discretion of the trial court. Such order will not be overturned absent an abuse of discretion. (*In re Buchanan* (1978), 62 Ill. App. 3d 463, 379 N.E.2d 122.) As to the particular statute involved in the instant case, this court made comment in *In re Johnson* (1985), 134 Ill. App. 3d 365, 480 N.E.2d 520. In *Johnson*, this court stated that the trial court need not make an explicit finding on the record regarding the second factor of whether services aimed at family preservation have been unsuccessful prior to placing custody with the DCFS.

■ In the instant case, we find no abuse of discretion. Implicit in the findings of the trial court is the fact that the minor, J.S., has been physically abused and no reasonable explanation has been offered for the child's injuries. In considering the nature and severity of the child's injuries, we sustain the trial court in its finding that respond-

ent is unable to properly care for the child. This is true in light of respondent's relationship with the perpetrator of the abuse, respondent's fiance, Rick Shelton.

Respondent would have us believe that her relationship with Shelton is stable enough to allow her to protect the child, or that she is capable of giving up her relationship in the event of Shelton ultimately being found guilty of abuse to the minor. Several factors alert us, as they did the trial court, to proceed with caution in fully accepting respondent's statement. In the first place, respondent herself was an abused child. She acknowledged in her testimony that this may have caused a blind spot to signs of abuse in the past, but not now. Second, respondent and Shelton plan to marry, and respondent is presently carrying their child. Their fondness for each other is ongoing as they continue to see each other. Yet, respondent would have us believe that a guilty verdict at a criminal trial for child abuse would give her the impetus to cut short their relationship. Finally, in light of the unresolved questions about the child's injuries, neither respondent nor Shelton have attempted counseling for any period of time.

For the foregoing reasons, the dispositional order of the circuit court of McLean County is affirmed.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.