*In re* BEATRIZ S. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellant, v. Irene T., Respondent-Appellee).

First District (4th Division)   No. 1—91—1470

Opinion filed October 13, 1994.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Susan S. Wigoda, Assistant State's Attorneys, of counsel), for the People.

James D. Rosas, of Chicago, for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

This is an appeal from a dispositional order entered in a juvenile court proceeding which granted Irene T. weekly unsupervised visitation with her minor daughters. On appeal, the State argues that the trial court abused its discretion in failing to qualify two State witnesses as experts and in granting Irene unsupervised visitation rights. We agree with the State and therefore reverse and remand this case for further proceedings.

On June 21, 1988, Irene along with her three daughters, eight-year-old Beatriz S., four-year-old Edna S., and three-year-old Lilly S., resided with Irene's paramour, Leonardo Nunez. While Lilly was taking a bath, Leonardo poured a bucket of boiling water over the child. Lilly suffered thermal burns over 60% of her body and died on July 10, 1988. Prior to her death, Lilly was confined to the burn unit at Cook County Hospital. Physical examinations of Lilly conducted both before and after her death revealed: 12 scars on the top of her head consistent with blunt trauma; old untreated fractures of the right femur, radius, and ulna also caused by blunt trauma; two vaginal tears; and an enlarged hymenal opening consistent with sexual penetration.

On June 30, 1988, Beatriz and Edna were taken into protective custody and were subjected to physical examinations. The examina-

tion of Beatriz revealed evidence of physical and sexual abuse consistent with violent sexual assault. And while Edna's physical examination was normal, the physician's psychological findings were consistent with physical abuse. On July 1, 1988, petitions for adjudication of wardship were filed on behalf of Beatriz and Edna and the Illinois Department of Children and Family Services (DCFS) was appointed their temporary custodian.

On March 12, 1990, Leonardo Nunez was convicted of Lilly's murder, and on April 20, 1990, Leonardo's son, David Nunez, was convicted of two counts of criminal sexual assault against Beatriz and Edna.

On August 9, 1990, a stipulated bench trial was conducted on the petitions for adjudication of wardship. The court was presented with evidence relating to the circumstances surrounding Lilly's death. Although denied by Irene, the parties stipulated that both Leonardo and Beatriz would testify that Irene was present when Leonardo poured boiling water on the child and that she told Beatriz to lie to the police and say that Lilly pulled a pot of boiling water over onto herself. The parties stipulated to the testimony of a number of witnesses including Beatriz, Leonardo Nunez, David Nunez, three physicians, and a police officer. Although no stipulation was made as to the truth of that testimony, and without specific attribution, the testimony revealed the following: both Irene and Leonardo struck all three of the children with their fists, belts, sticks, and an electrical cord; Irene and Leonardo made Lilly sleep on the floor, eat off the floor, and eat hot peppers; Beatriz was raped both vaginally and anally by David Nunez; and Edna was raped by David Nunez.

At the conclusion of the trial, the court found, *inter alia*, that: the State had met its burden on all counts; Irene was present on more than one occasion when Beatriz and Edna were injured; both Irene and Leonardo physically abused Beatriz; both Leonardo and his son David sexually abused Beatriz; both Irene and Leonardo physically abused Edna; Leonardo sexually abused Edna; and Irene was unfit to have custody of Beatriz and Edna.

After a dispositional hearing, the trial court entered an order on May 1, 1991, declaring both Beatriz and Edna wards of the State but granted Irene the unsupervised visitation which is the basis of the State's appeal.

For purposes of the dispositional hearing, the trial court had before it various reports generated by agencies rendering services to the minors and their parents. (705 ILCS 405/2—22 (West 1992); *In re J.H.* (1991), 212 Ill. App. 3d 22, 570 N.E.2d 689; *In re L.M.* (1989), 189 Ill. App. 3d 392, 545 N.E.2d 319.) One such report was a DCFS

Supplemental Social Services Investigation Report dated November 9, 1990, signed by both Ana Campos and her supervisor, Naida Valdes, which recommended that both Beatriz and Edna be declared wards of the State and that Irene be allowed supervised visitation. Additionally, the State called three witnesses to testify with respect to Irene's fitness to care for Beatriz and Edna: Pat Utigard, Samuel Acosta, and Campos. No other witnesses were called.

Utigard holds a bachelor's degree in sociology, a master's degree in social work, and is licensed by the State as a clinical social worker. At the time of her testimony, Utigard was the director of social services at the Lydia Home, a licensed residential facility which cares for children who, because of abuse or neglect, have been declared wards of the State. She was the social worker assigned to Beatriz and Edna.

Acosta has a bachelor's degree in divinity, a master's degree in the sociology of religion, a master's degree in psychology, and a doctorate degree in ministry with a specialty in counseling. He was trained in both individual and family psychotherapy at Lutheran General Hospital, where he was employed for 10 years. Acosta acted as a therapist for both minors, Irene, and the father of the minors.

Campos is a child welfare specialist employed by the DCFS. At the time of her testimony, she had been a child welfare specialist for six years. She and her supervisor, Valdes, had been assigned to Beatriz and Edna since 1989.

When tendered by the State as experts, the trial court refused to qualify either Utigard or Acosta. The State argues that both rulings constituted an abuse of discretion.

Illinois Supreme Court Rule 220(a)(1) defines an expert as "a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial." (134 Ill. 2d R. 220(a)(1).) Whether a witness is sufficiently qualified to testify as an expert is a matter committed to the sound discretion of the trial court, whose determination on the issue may be reversed only if it constitutes a clear abuse of that discretion. *Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 302 N.E.2d 257.

■ We agree with the State and find that the record in this case conclusively establishes that the trial court abused its discretion in failing to qualify Utigard as an expert in social work and Acosta as an expert in family therapy. Not only did both have the necessary education and experience to qualify as experts, both had counseled

parties to this litigation and, in the case of Utigard, she was licensed by the State. Nothing was brought out in the examination of either witness to even remotely suggest that they were not qualified to render an expert opinion and, as a result, we find the trial court's rulings on their qualifications to be arbitrary and clearly erroneous. See *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96; *Atria v. Geist* (1978), 64 Ill. App. 3d 88, 380 N.E.2d 1187.

To compound matters, although the trial court refused to qualify either Utigard or Acosta as an expert, they were permitted, even in the face of objection, to render opinion testimony. Pursuant to an inquiry by the court itself, Acosta testified that he did not recommend that Irene be granted unsupervised visitation with Beatriz and Edna. He was of the opinion that Irene might not be able to adequately protect them in an unsupervised setting. The testimony of Campos on the issue of Irene's visitation was internally inconsistent and in part contradicted her own report. On direct examination, she testified that she would not feel comfortable recommending unsupervised visitation. She did not feel that Irene would be able to protect Beatriz and Edna. On cross-examination, she testified that Irene could protect the children during short periods of unsupervised visitation if she were not involved with a man, but acknowledged that she had not consulted with Acosta on the issue.

■ We have no quarrel with the proposition that a dispositional order entered in a proceeding under the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1—1 *et seq.*) is a matter committed to the sound discretion of the court (*In re J.S.* (1987), 151 Ill. App. 3d 884, 504 N.E.2d 513), but the review of a dispositional order must be made in light of the purposes and policies of the Act (*In re Wealer* (1976), 42 Ill. App. 3d 479, 355 N.E.2d 187). The overriding purpose of the Act to which all other goals are subordinate is the "best interest" of the minors involved. (*In re Violetta B.* (1991), 210 Ill. App. 3d 521, 568 N.E.2d 1345.) Granting unsupervised visitation to Irene, who physically abused both of these children and stood by when they were beaten and raped, based solely upon the testimony of Campos, who contradicted her own report and who could not make up her mind as to whether Irene could adequately protect Beatriz and Edna, in the face of the unequivocal testimony of Acosta and the DCFS recommendation contained in its report, was not in the best interests of the minors. The court's ruling on the issue was against the manifest weight of the evidence and a gross abuse of discretion. In support of our conclusion, we cite but two sources: the record in this case and simple common sense.

As a consequence of the foregoing, the dispositional order of the

trial court granting Irene unsupervised visitation with Beatriz and Edna is reversed and this case is remanded to the trial court for further proceedings.

Reversed and remanded.

CAHILL, J., concurs.

JUSTICE JOHNSON, dissenting:

I respectfully dissent from the majority opinion as I do not believe that the trial court's findings were against the manifest weight of the evidence. From the outset I feel it necessary to stress my cognizance of the past abuse suffered by the minors in this case and I do not seek to minimize their experiences in any way. Nonetheless, this is not a case regarding the restoration of custody to respondent. This case is about allowing respondent two-hour weekly, unsupervised visitation with her daughters at her home. This is not an attempt to place the minors into the same circumstances where they experienced abuse in the past.

Dr. Samuel Acosta, a psychotherapist at Lutheran General Hospital, treated respondent once a week in individual therapy. He described her as "very courageous" because of all the pressure she suffered as a result of "all *** the fingers pointing to her." He stated that she has made progress, finally accepting personal responsibility for the abuse of her children, although it was his opinion that the girls should not be returned home until the therapeutic process was complete and an evaluation was conducted.

On cross-examination, Dr. Acosta recollected the therapy sessions he had with E.S. and B.S. Both girls indicated that they enjoy their meetings with respondent. Recently the girls attended respondent's graduation from a dressmaking program and Dr. Acosta stated that they were "very proud of their mother." He continued, relating that B.S. "felt very good about her mother, and I could sense the joy she had." E.S. had a similar reaction and Dr. Acosta believed that the minors would benefit from similar outings with respondent in the future.

Discussing his 100 hours of therapy with respondent, Dr. Acosta believed that she has made a "great improvement" and has always followed all of his recommendations. He also believed that she would comply with all of his future therapeutic recommendations which would enable her to care for her daughters. When asked about whether the girls could benefit from longer periods of visitation with their mother, Dr. Acosta stated, "Yes" and further felt that respon-

dent would benefit by increased time with her children. He saw no potential harm in increasing the supervised visitation periods between respondent and the minors.

Anna Campos, a DCFS child welfare specialist, related that respondent has cooperated with all of the services provided by DCFS. She was offered therapy, a psychological evaluation, and supervised visitation with the minors. Campos explained that respondent currently visits with the minors for two hours every Wednesday evening at her office. During the visits, respondent plays with the girls, asks them what they did at school, and brings projects for them. Campos characterized the interaction between respondent and her daughters as "good" and "positive." She stated: "The girls do like to talk with their mom and do things with her." According to Campos, respondent has complied with all of the DCFS recommendations and has been completely cooperative with the Department's "efforts" in the case. Campos did not see a problem permitting respondent to have short periods of unsupervised visits with the girls. The ultimate goal is to reunify the girls with one or both of their parents.

Satisfied with the evidence presented, the trial court stated that respondent "has always been appropriate during each and every visit that she has had with the children. Not only has she been appropriate[,] she has cooperated with the Service Plan and *** has done everything she has been asked to do. She has also made progress in accepting her responsibility for what has happened to her children and that she will be safe during visitation and I do not equate custody with visitation ***." However, in accordance with the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1991, ch. 37, par. 801—1), the trial court found that before the minors can be returned to respondent's care, there must be a fitness hearing.

In granting respondent the unsupervised visitation, the trial court clearly recognized the family's history, and the ruling accordingly contained various contingencies for the purpose of securing the minors' well-being. The trial court initially stated that respondent would be allowed unsupervised weekly day visits, two hours in duration, at her home. The trial court indicated that no males were to be present during these visits and, if this safeguard is violated, the unsupervised visits are subject to termination. Corporal punishment is not to be used during the visits by respondent or by anyone else. In three months or after approximately 12 visits, the trial court stated the visitation plan would be reviewed and, if necessary, modified.

I believe that the prescribed visitation plan is the next step in the family's recovery and furthers the DCFS goal of reuniting the

minors with respondent. Accordingly, I find no abuse of discretion with respect to the trial court's granting respondent this limited form of unsupervised visitation with her daughters.