*In re* T.L.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. T.L.C., a Minor, Respondent (Dana L. Corman, Guardianship Adm'r for the Department of Children and Family Services, Respondent-Appellant)).

Fourth District   No. 4—96—0254

Argued November 7, 1996.—Opinion filed December 27, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick (argued), Assistant Attorney General, of counsel), for appellant.

Tony Lee, State's Attorney, of Paxton (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Harvey C. Welch, of Law Offices of Harvey C. Welch, of Urbana, guardian *ad litem*.

JUSTICE GREEN delivered the opinion of the court:

In this case we hold that when a circuit court makes an original disposition order placing a child with the Illinois Department of Children and Family Services (DCFS) pursuant to section 2—27(1)(d) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—27(1)(d) (West Supp. 1995)), the circuit court cannot properly dictate where DCFS shall place the child. In so ruling, we are drawing an analogy to and following the precedent of the first district in *In re Chiara C.*, 279 Ill. App. 3d 761, 665 N.E.2d 404 (1996), where a similar holding was made concerning a dispositional order in regard to a child after a review hearing pursuant to section 2—28 of the Act. 705 ILCS 405/2—28 (West 1994).

Prior to February 13, 1996, several delinquency and dependency allegations in petitions in regard to minor respondent T.L.C. were before the circuit court of Ford County. On that date the State filed

an amended petition alleging that T.L.C. was a neglected minor as set forth in section 2—3(1)(b) of the Act (705 ILCS 405/2—3(1)(b) (West Supp. 1995)) in that the minor's environment was injurious to her health and welfare. The petition also realleged T.L.C. was a dependent minor pursuant to section 2—4(1)(c) of the Act. 705 ILCS 405/2—4(1)(c) (West Supp. 1995). Other petitions were withdrawn. At a subsequent hearing, the minor's father, who had never appeared, was defaulted. The mother, represented by a guardian *ad litem* (GAL) and the State's Attorney, stipulated that T.L.C. was a neglected and dependent minor and that she would be placed under the guardianship of DCFS with direction that she be placed with a private institution, the Mill at Rockford. Apparently, the court's probation officer had made arrangements with the officers of the Mill for T.L.C. to be accepted there in one week.

A social history presented by the probation officer indicated that (1) T.L.C. was a high school freshman; (2) she had no behavioral problems other than excessive absenteeism; (3) T.L.C. had a chaotic home situation living with her mother and three siblings, all of whom had different fathers; (4) her mother engaged in actions at home that bothered T.L.C.; and (5) T.L.C. had lived with a grandmother for awhile, but T.L.C. maintained the grandmother had abused her. A representative of DCFS appeared at the hearing objecting to the agreement, stating that DCFS was unaware of it and had no opportunity to "try and remedy the situation at home."

On February 28, 1996, the circuit court entered the order on appeal. In addition to finding that T.L.C. was neglected and dependent, the order also (1) found her parents were "unable, unfit and unwilling for reasons other than financial circumstances alone" to care for and train her; (2) appointed the guardianship administrator of DCFS her guardian with power to place; (3) "committed [T.L.C.] to [DCFS]" for residential placement at the Mill; and (4) gave T.L.C.'s parents temporary custody until she could be received by the Mill. A member of the staff of DCFS was present at the dispositional hearing and objected to the portions of the order requiring placement at the Mill. This staff person had only one day's notice of the hearing and had no opportunity to interview either T.L.C. or her mother. DCFS has appealed, contending that (1) the court lacked jurisdiction to order the placement and to provide for temporary custody with the parents; (2) the placement violated the doctrines of separation of powers and sovereign immunity; and (3) the temporary and permanent placements were breaches of discretion.

■ We conclude that the circuit court erred in directing that DCFS place the minor with the Mill after it made DCFS T.L.C.'s

guardian. As this issue is raised on direct appeal and not by collateral attack, we need not take up the ticklish question of whether the circuit court's order was void for lack of jurisdiction. See *In re M.M.*, 156 Ill. 2d 53, 75, 619 N.E.2d 702, 714 (1993) (Miller, C.J., concurring). As we are setting aside the order for placement, we need not consider whether it violated the doctrines of either separation of powers or sovereign immunity. Under the circumstances which render the order for placement at the Mill erroneous, we also find the order for temporary placement in error. We reverse and remand for a new hearing.

Section 2—23(1)(a)(2) of the Act provides that when, as here, the court determines that the child should not be returned to its home, one of the dispositions can be a placement "in accordance with Section 2—27." 705 ILCS 405/2—23(1)(a)(2) (West Supp. 1995). Section 2—27(1) lists, as away-from-home alternatives for placements, the following:

"(a) place him in the custody of a suitable relative or other person as legal custodian or guardian;

(b) place him under the guardianship of a probation officer;

(c) *commit him to an agency for care or placement, except an institution under the authority of the Department of Corrections or of the Department of Children and Family Services*;

(d) commit him to the Department of Children and Family Services for care and service ***." (Emphasis added.) 705 ILCS 405/ 2—27(1) (West Supp. 1995).

Section 2—27(2) of the Act further provides:

"*When a minor is committed to any agency, the court shall appoint the proper officer or representative thereof as legal custodian or guardian of the person of the minor.* Legal custodians and guardians of the person of the minor have the respective rights and duties set forth in subsection (9) of Section 1—3 except as otherwise provided by order of court; but no guardian of the person may consent to adoption of the minor unless that authority is conferred upon him in accordance with Section 2—29. An agency whose representative is appointed guardian of the person or legal custodian of the minor may place him in any child care facility." (Emphasis added.) 705 ILCS 405/2—27(2) (West Supp. 1995).

Section 1—3(8)(c) of the Act defines "[g]uardianship," in part, as follows:

" 'Guardianship of the person' of a minor means the duty and authority to act in the best interests of the minor, subject to residual parental rights and responsibilities, to make important

decisions in matters having a permanent effect on the life and development of the minor and to be concerned with his or her general welfare. It includes but is not necessarily limited to:

\* \* \*

(c) the rights and responsibilities of legal custody *except where legal custody has been vested in another person or agency.*" (Emphasis added.) 705 ILCS 405/1—3(8)(c) (West 1994).

Section 1—3(9) of the Act defines legal custody as follows:

"[T]he relationship created by an order of court in the best interests of the minor which imposes on the custodian the responsibility of physical possession of a minor and the duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, *except as these are limited by residual parental rights and responsibilities and the rights and responsibilities of the guardian of the person, if any.*" (Emphasis added.) 705 ILCS 405/1—3(9) (West 1994).

The State points out that the foregoing provisions of section 1—3 of the Act indicate that the circuit court can properly name one person the guardian of a minor subject to the Act and give the custody of the minor to another person or entity. The order on appeal does not appoint the Mill or any officer thereof as custodian but the State maintains that this was the effect of the order. We recognize that the court can generally split the guardianship and custody of a minor. However, we conclude that when guardianship is placed with DCFS, the statutory format does not permit the court to dictate to DCFS exactly where custody must be placed.

■ Section 2—27(1)(d) of the Act further provides that when a child is placed with DCFS, that agency "shall be given due notice of the pendency of the action." 705 ILCS 405/2—27(1)(d) (West Supp. 1995). DCFS is created and governed by the Children and Family Services Act (Services Act), section 6a(a) of which states:

"With respect to each Department client for whom the Department is providing placement service, the Department shall develop a case plan designed to stabilize the family situation and prevent placement of a child outside the home of the family, reunify the family if temporary placement is necessary, or move the child toward the most permanent living arrangement and permanent legal status. Such case plan shall provide for the utilization of family preservation services. Such case plan shall be reviewed and updated every 6 months. Where appropriate, the case plan shall include recommendations concerning alcohol or drug abuse evaluation." 20 ILCS 505/6a(a) (West 1994).

Section 2—10.1 of the Act provides that "[w]henever a minor is placed in shelter care with [DCFS] or a licensed child welfare agency in ac-

cordance with Section 2—10 [of the Act], [DCFS] or agency, as appropriate, shall prepare and file with the court *** a case plan which complies with [certain federal legislation]." 705 ILCS 405/2—10.1 (West 1994).

The Act contains no direct express requirement for DCFS to have prepared a plan before the administrative guardian can be appointed guardian in cases where no shelter hearing has taken place, but the requirement of section 6a(a) of the Services Act indicates that one shall be prepared when DCFS is "providing placement." 20 ILCS 505/6a(a) (West 1994). Thus, the legislative format indicates that DCFS is to have input and direction in regard to any order in which a minor is placed with it. The relationship between the circuit court and DCFS upon the court ordering a placement is further explained by section 2—23(3) of the Act, which states:

> "The court also shall enter any other orders necessary to fulfill the service plan, including, but not limited to, (i) orders requiring parties to cooperate with services, (ii) restraining orders controlling the conduct of any party likely to frustrate the achievement of the goal, and (iii) visiting orders. *Unless otherwise specifically authorized by law, the court is not empowered under this subsection (3) to order specific placements, specific services, or specific service providers to be included in the plan.* If the court concludes that [DCFS] has abused its discretion in setting the current service plan or permanency goal for the minor, the court shall enter specific findings in writing based on the evidence and shall enter an order for the Department to develop and implement a new permanency goal and service plan consistent with the court's findings. The new service plan shall be filed with the court and served on all parties. The court shall continue the matter until the new service plan is filed." (Emphasis added.) 705 ILCS 405/2—23(3) (West Supp. 1995).

Section 2—23(3) of the Act indicates that when a minor is placed with DCFS, that institution is to make plans for particular service providers, such as private institutions, to render services to the minor with the function of the court being to accept or veto the plan and, if the plan is vetoed, to direct DCFS to provide another plan. In this way, the expertise and knowledge of DCFS can best be utilized with the safeguard remaining in the court's power to disapprove. This is the interpretation that the *Chiara* court placed on similar language in section 2—28 of the Act.

Section 2—22(5) of the Act requires that after a disposition hearing, the circuit court shall set the date "for the first permanency hearing, to be conducted under subsection (2) of Section 2—28." 705 ILCS 405/2—22(5) (West Supp. 1995). Section 2—28(2) of the Act

provides for those hearings and other hearings where the court is reviewing the status of the minor ward of the court. 705 ILCS 405/ 2—28(2) (West Supp. 1995). In *Chiara*, a section 2—28(2) petition was filed on behalf of a child in the guardianship of DCFS, which had placed her in the custody of a natural aunt. The petition sought a court order directing DCFS to place the ward in a licensed residential facility for college-bound students. The circuit court of Cook County overruled DCFS's objection to the request and entered an order requiring the placement. On appeal in *Chiara*, the first district reversed, stating:

"Section 2—28(2) of the Act provides in relevant part:

'If, after receiving evidence, the court determines that the [permanency] plan or the services contained in the plan are not reasonably calculated to facilitate achievement of the permanency goal, the court shall put in writing the factual basis supporting the determination and enter specific findings based on the evidence as to the reason or reasons why the services are not reasonably calculated to facilitate achievement of the permanency goal. The court also shall enter an order remanding the matter to the Department of Children and Family Services for further consideration of the nature of the services to be provided in light of the court's findings. *Unless otherwise specifically authorized by law, the court is not empowered under this subsection (2) or under subsection (3) to order specific services or service providers to be included in the plan.*' (Emphasis added.) 705 ILCS 405/2—28(2) (West 1994).

Thus, the statute delineates the specific power of the circuit court: if the court is dissatisfied with the permanency plan or its goal, it is required to make specific findings and to remand the matter to DCFS for its further consideration. The statute specifically disempowers the circuit court to order specific services or service providers.

The purpose of a permanency review hearing is to determine, *inter alia*, 'the appropriateness of the services delivered and to be delivered to effectuate the [permanency] plan and goal.' 705 ILCS 405/1—3(11.2) (West 1994). Although the proceeding here was not labelled a permanency review hearing, its purpose—to determine the appropriateness of Chiara's residence and educational services—was the equivalent of such a hearing.

The circuit court is likewise specifically disempowered from ordering specific services following an intervention proceeding or a dispositional hearing. 705 ILCS 405/1—5(2)(b), 2—23(3) (West 1994). Thus, a reading of the Act as a whole shows that at hear-

ings on the appropriateness of juvenile services, the legislature intended that the circuit court not be empowered to order specific services. Because education is a service as contemplated by DCFS and the proceeding at issue here was analogous to a permanency review hearing, we conclude that the strictures of section 2—28 apply to the instant case. Thus, unless another provision of the Act authorizes the circuit court's orders here, those orders must be vacated. 705 ILCS 405/2—28(2) (West 1994)." *Chiara*, 279 Ill. App. 3d at 765-66, 665 N.E.2d at 407.

At all times pertinent here, both sections 2—23(3) and 2—28(2) of the Act are more favorable to DCFS than they were at the time of *Chiara*, because both have been amended to include among the actions which the circuit court cannot take "[u]nless otherwise specifically authorized by law" (Pub. Act 89—17, § 5, eff. May 31, 1995 (1995 Ill. Laws 598, 600) (amending 705 ILCS 405/2—23(3) (West 1994)) the ordering of "specific placements" to be included in "the plan" (Pub. Act 89—17, § 5, eff. May 31, 1995 (1995 Ill. Laws 598, 602) (amending 705 ILCS 405/2—28(2) (West 1994)). In *Chiara*, the appellate court was concerned because it felt that the effect of the circuit court order would place the minor under a guardianship of both DCFS and the institution for which the child was placed. No such problem would exist here as the child could be in the guardianship of DCFS but in the custody of the Mill. However, that reason was only a secondary reason for the holding. The thrust of the holding there was the same as that here. The statutory format provides for the institution guardian such as DCFS, operating under a plan, to make placement decisions with the safeguard being that the placements are subject to disapproval and required reconsideration by the circuit court.

Had the order for placement at the Mill been proper, the court's direction that the child stay with the mother for the short period before the Mill could receive the child would not necessarily have been unreasonable or otherwise erroneous. However, consistent with our holding in regard to the court's order of placement at the Mill, we conclude that the child should have been placed initially in the custody of DCFS with its facilities being used.

We reverse and remand for a new dispositional hearing at which time the circuit court should hear additional evidence so that a new dispositional order may be entered based upon this opinion and the circumstances then existing.

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.