In re E.L. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Angie L., Respondent-Appellant).

Third District   No. 3—03—0710

Opinion filed December 1, 2004.

Timothy D. McCarthy, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Lawrence M. Bauer and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

James Bradshaw, of Peoria, guardian *ad litem*.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

The respondent, Angie L., is the mother of E.L. and Z.L. (minors). After an adjudicatory hearing, the minors were found to be neglected by reason of an injurious environment. Following a subsequent dispositional hearing, the trial court reserved a ruling on unfitness, left the children in the custody of the respondent, and appointed the Department of Children and Family Services (DCFS) guardian. The respondent appeals. We affirm.

## I. FACTS

On October 21, 2002, the State filed a petition alleging that the minors were neglected by reason of an injurious environment. This petition contended that the minors' environment was injurious because: (a) the respondent's husband (and the minors' father) had committed sex offenses on two other children; (b) the minors' father was a child pornographer and had viewed photos of children in sexual acts; and (c) the respondent knew that the minors' father had been involved in child pornography and felt that this activity was not a problem.

On October 22, 2003, the court entered an arraignment order. That order instructed the respondent to cooperate with DCFS in any necessary counseling and also included an order of protection which limited the father's contact with the minors to visitation supervised by DCFS.

An adjudicatory hearing was held on July 3, 2003. Peoria police detective Michael Eddlemon testified that in October of 2002, he was investigating allegations that the father had sexually abused two minors. Eddlemon asked the father if he was attracted to young children. The father responded that if Eddlemon asked the respondent, she would state that he thought the most beautiful thing in the world was a naked 15-year-old girl. Additionally, the father indicated that he had a computer on which he viewed child pornography and liked looking at pictures of girls between the ages of 13 to 15.

Eddlemon also spoke to the respondent about her knowledge of her husband's interest in child pornography. When confronted with

her husband's statement about 15-year-old girls, the respondent did not seem surprised by the question and did not deny that she knew of her husband's predilections. Instead, she stated that "there was a big difference between looking and touching and there was a big difference between a 15-year-old girl and a 6-year-old girl." The respondent also told Eddlemon that there was nothing illegal about looking at pictures of naked girls. When Eddlemon informed her that it was in fact illegal and also out of the norm to do so, the respondent stated that there were several versions of normal.

Eddlemon testified that when he and another officer later executed a search warrant on the home of the father and the respondent, they found a laptop computer. After removing the computer from the home, several pictures of children involved in sex acts were removed from the hard drive, printed out, and ultimately placed into evidence. Eddlemon also testified that he found a pornographic picture of the respondent, though that picture was not entered into evidence. It was Eddlemon's testimony that this picture showed the respondent naked, in pigtails, and with a rose in her mouth. Finally, the State introduced a certified copy of the father's conviction on two counts of aggravated criminal sexual abuse and four counts of child pornography.

The respondent also testified and denied that she ever knew her husband was looking at child pornography or told Eddlemon that she was aware of that fact. She also denied that she ever indicated or thought that looking at pictures of naked children was permissible, but did admit to telling Eddlemon that there was a difference between looking and touching. Lastly, the respondent stated that, other than the fact that her husband had been convicted, she did not know whether he actually committed the offenses for which he was charged.

At the close of evidence, the court heard and denied the respondent's motion for a finding as a matter of law as to the count charging her with knowledge of her husband's involvement in child pornography. The court denied that motion because: (1) the respondent did not make a "fairly animated response and a denial" of the father's comment about 15-year-old girls, and (2) the picture of the respondent, as described by Eddlemon, was the mirror image of one of the images of child pornography taken from the father's computer.

At the close of evidence, the trial court found that the petition had been proved in its entirety, and found that the State had proven that the minors were in an injurious environment. At a subsequent dispositional hearing, the trial court reserved a ruling on unfitness. The court appointed DCFS guardian, but specified that the children should remain placed with the respondent. The respondent appeals.

## II. ANALYSIS

### A. Neglect

On appeal, the respondent first contends that the State failed to prove an injurious environment. We disagree.

■ Children are neglected if their environment is injurious to their welfare. 705 ILCS 405/2—3(1)(b) (West 2002). "An 'injurious environment' is an amorphous concept which cannot be defined with particularity; therefore, each case should be reviewed considering the specific circumstances of that case." *In re M.K.*, 271 Ill. App. 3d 820, 826, 649 N.E.2d 74, 79 (1995). Nevertheless, parents have a duty to keep their children free from harm; thus, their failure to provide a safe and nurturing shelter is statutory neglect. *In re B.J.*, 316 Ill. App. 3d 193, 735 N.E.2d 1058 (2000). It is the State's burden to prove an allegation of neglect by a preponderance of the evidence. *In re N.B.*, 191 Ill. 2d 338, 730 N.E.2d 1086 (2000). That is, the State must demonstrate that an allegation of neglect is probably more true than not. *In re L.M.*, 319 Ill. App. 3d 865, 747 N.E.2d 440 (2001). On review, we will not overturn a trial court's finding of neglect unless it is against the manifest weight of the evidence. *L.M.*, 319 Ill. App. 3d 865, 747 N.E.2d 440. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re D.F.*, 201 Ill. 2d 476, 777 N.E.2d 930 (2002).

■ We find that the trial court's adjudication of neglect was not against the manifest weight of the evidence. The trial court was presented with evidence tending to show that the respondent both knew that her husband was involved in child pornography and did not think that there was a problem with his looking at naked children. The trial court did not find the respondent's attempts to dispute this evidence credible. It is for the trial court to make such credibility determinations, and we will not substitute our judgment for that of the trial court on such matters. *People v. Spann*, 332 Ill. App. 3d 425, 773 N.E.2d 59 (2002). Therefore, we affirm the trial court's adjudication of neglect as to the respondent.

### B. Reservation of Fitness

■ Next, we address the respondent's contention that the trial court abused its discretion when it reserved ruling on her fitness but, nevertheless, granted DCFS guardianship.

In fashioning a dispositional order, the overriding concern is the best interest of the child. *In re Beatriz S.*, 267 Ill. App. 3d 496, 641 N.E.2d 953 (1994). The mandates of the trial court's dispositional order are reviewed under an abuse of discretion standard. *B.J.*, 316 Ill. App. 3d 193, 735 N.E.2d 1058.

The respondent argues that pursuant to the requirements of section 2—27 of the Juvenile Court Act of 1987 (705 ILCS 405/2—27 (West 2002)), the court erred by failing to make a finding of unfitness before granting DCFS guardianship. However, section 2—27 specifically requires that a finding of unfitness is required before (among other things) a minor may be *placed* with DCFS for care and service. See 705 ILCS 405/2—27 (West 2002). It does not address the situation where custody remains with the parent and only *guardianship* is granted to DCFS. Thus, the section 2—27 requirement of an unfitness finding does not apply to this case.

Section 2—23, on the other hand, specifically provides that a trial court may issue a dispositional order continuing the minors in the custody of their parents. 705 ILCS 405/2—23(1)(a)(1) (West 2002). Moreover, our courts have recognized that the trial court can generally split the guardianship and custody of a minor. *In re T.L.C.*, 285 Ill. App. 3d 922, 675 N.E.2d 228 (1996). So long as custody remains with the respondent, we can perceive no error in also granting guardianship with DCFS. *Cf. T.L.C.*, 285 Ill. App. 3d 922, 675 N.E.2d 228 (when guardianship *and* placement of child are placed with DCFS, the trial court may not dictate exactly where custody must be placed).

### III. CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

LYTTON and SCHMIDT, JJ., concur.