NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200372-U

NO. 4-20-0372

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.J. and J.S., Minors | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 19JA66 |
| v. | ) | |
| Filesha J., | ) | Honorable |
| Respondent-Appellant). | ) | John R. Kennedy, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding (1) the trial court's decision to make the minors wards of the court was not against the manifest weight of the evidence and its dispositional order was not an abuse of discretion and (2) the trial court did not err in denying respondent mother's motion to reconsider the dispositional order.

¶ 2    In October 2019, the State filed a petition for adjudication of neglect, alleging J.J. (born March 3, 2016) and J.S. (born June 28, 2018) were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2018)), in that their environment was injurious to their welfare when they resided with respondent mother, Filesha J., because the environment exposed the minors to substance abuse. During a January 2020 adjudicatory hearing, respondent mother stipulated to the allegations of neglect.

¶ 3    Following a June 2020 dispositional hearing, the trial court (1) made J.J. and J.S. wards of the court, (2) ordered the children remain in the custody of respondent mother, whom it

determined to be fit, and (3) placed guardianship with the Illinois Department of Children and Family Services (DCFS). Respondent father of J.J., Allen B., and respondent father of J.S., Donovan S., are not parties to this appeal.

¶ 4        In July 2020, respondent mother filed a motion to reconsider the dispositional order. After a hearing on the motion to reconsider, the trial court denied the motion.

¶ 5        Respondent mother appeals from the trial court's June 2020 dispositional order and its denial of her motion to reconsider. On appeal, respondent mother argues the trial court (1) erred in making the children wards of the court and (2) in the alternative, erred in denying respondent mother's motion to reconsider the dispositional order.

¶ 6                                I. BACKGROUND

¶ 7                    A. The State's Petition for Adjudication of Neglect

¶ 8        In October 2019, the State filed a petition for adjudication of neglect, alleging J.J. and J.S. were neglected in that their environment was injurious to their welfare when they resided with respondent mother because the environment exposed the minors to substance abuse.

¶ 9                        B. The January 2020 Adjudicatory Hearing

¶ 10        At a January 2020 adjudicatory hearing, respondent mother stipulated to the allegations of neglect. The trial court found the stipulation to be knowing, voluntary, and supported by a factual basis as provided by a September 7, 2019, police report.

¶ 11        The police report alleged that on September 7, 2019, at 2:35 a.m., a police officer found respondent mother in a McDonald's drive-thru lane, passed out in her vehicle with two small children asleep in the back seat. The police officer detected a strong odor of alcohol coming from respondent mother and the vehicle. The police officer also found an open and almost empty bottle of Patrón tequila on the front passenger floorboard of the vehicle. The

police officer called an ambulance after the officer tried several times to wake respondent mother to no avail.  An ambulance transported respondent mother to a hospital.  At the hospital, respondent mother declined to consent to chemical testing.  Police arrested respondent mother and transported her to jail.

¶ 12        On January 16, 2020, the trial court entered a written adjudicatory order finding J.J. and J.S. neglected.

¶ 13                        C. The Dispositional Report

¶ 14        On June 1, 2020, Bethany Christian Services (BCS) filed a dispositional report. The report indicated J.J. and J.S. resided with respondent mother, respondent mother was not currently in a romantic relationship, and respondent mother was employed full-time at AT&T. Respondent mother previously engaged in mental health services through Rosecrance where on February 25, 2020, she was successfully discharged from group therapy.  Under "Substance Abuse History," the report stated,

"Filesha is currently awaiting trial for a DUI/alcohol.
Filesha reported that she previously smoked marijuana and denies
current use.  Filesha also reported that she in the past would
consume alcohol and go out twice a month but [*sic*].

Filesha has been scheduled for four random drug/alcohol
screens.  Filesha failed to attend two of the scheduled random
drug/alcohol screens.  Filesha completed two random drug/alcohol
screens that were negative for all substances and alcohol.  Filesha
successfully completed drug screens on 10-17-19 and 11-7-19,

which were both negative. She failed to appear for screens on 11-1-19 and 11-5-19."

¶ 15    Under "Family Environment/Functioning/Child Rearing," the report further stated,

"Filesha has some protective abilities. Filesha is currently working from home due to COVID. Filesha makes sure that [J.J.'s] and [J.S.'s] physical needs are met. Filesha is aware of [J.J.'s] and [J.S.'s] nutritional needs. Filesha has been observed by workers to practice appropriate parenting skills. She has been observed to have a healthy attachment with both [J.J.] and [J.S]. This worker has observed many positive interactions between the family members. The prognosis is good due to Filesha being successfully discharged from substance abuse treatment, previous engagement in mental health services, and Filesha receiving domestic violence education through her mental health therapist at Rosecrance. Filesha is cooperative with intact worker and has attended scheduled appointments and is engaged with worker. Filesha has completed recommended services to ensure that her family stays intact.

Filesha has demonstrated ability to correct the conditions that brought her family to the notice of DCFS. Filesha has been cooperative with services in order to keep her family intact."

¶ 16 The report also indicated Allen B. engaged in visitation with J.J. on the weekends but Allen B. had not yet engaged in services. Regarding J.J. and J.S., the report stated,

"[J.J.] appears to be happy and healthy, due to [J.J.] only being 3 years old most of this information was provided by his mom, Filesha J. [J.J.] is well behaved and social with others. He enjoys showing others his toys and drawings. He enjoys playing with his toys and interacting with his sister, J.S. [J.J.] appears to have reached and exceeded his developmental milestones.

* * *

*** Due to [J.S.] being 1-year old this information was provided by her mother, Filesha J. [J.S.] has a very sweet and playful personality. She enjoys socializing with others. She enjoys playing with her toys and interacting with her brother, [J.J]. [J.S.] appears to have reached all developmental milestones."

¶ 17 BCS recommended, in relevant part, (1) J.J. and J.S. remain in the custody of respondent mother, (2) respondent mother "has completed mental-health services, but should continue with individual therapy in the event she needs assistance managing her mental health[,]" and (3) respondent mother "has cooperated with [DCFS] and/or any assigned Private Agency and has complied with the terms of the service plan and has corrected the conditions that led to intact family involvement."

¶ 18 On June 3, 2020, BCS filed a supplemental dispositional report reiterating the summarized facts and recommendations in the first dispositional report.

¶ 19 D. The June 2020 Dispositional Hearing

- 5 -

¶ 20        On June 3, 2020, the trial court conducted a dispositional hearing.  The court took

into consideration the dispositional reports and heard recommendations from the parties.  The

State recommended the children remain in the custody of respondent mother but guardianship be

granted to DCFS.  In support of its recommendation, the State argued,

> "[Respondent mother] has engaged in services and appears to be
> doing very well overall.  She's been very cooperative with the
> agency.  My concern with the services is there have not been a lot
> of drops, and I think those are very important in substance abuse
> cases.  I think that's—I don't think that's the fault of [respondent
> mother].  I know there were some done at Rosecrance when she
> was there.  There were some done prior to that, but I think, due to
> the closures and due to a lot of different things, there was not
> near—I think the most recent drop was January of 2020, and I do
> have concerns about that.

                                * * *

> I am asking that guardianship be granted to [DCFS].  I do
> think there are a few things that still need to be addressed, as I've
> already stated.  And I think it is in the minor's best interest to have
> that guardianship just to make sure those things get done.  I don't
> anticipate any problems with the services being—the assessments
> being done and the drops being done, and I hope this is a very
> short-lived wardship, but I do think it's necessary at this time."

¶ 21        The guardian *ad litem* agreed with the State's recommendation.  Specifically, the guardian *ad litem* stated, "I agree with the State's recommendation.  Actually, with all of it."  Counsel for respondent mother asked the court to close the case.  Specifically, counsel argued,

"At this point, [respondent mother] has engaged in all the services that were recommended of her.  I know that there is— isn't much there, as far as drops.  And considering why this case came in.  I know why that is a concern.  However, she's indicated that she has not had any kind of substance abuse issues.  She hasn't consumed any alcohol or taken part in drugs since this case has opened.  She has completed her mental health counseling at Rosecrance and appears to be handling her mental health well and has clearly benefited from that service.  She and [Allen B.] have been able to co-parent their child together without any kind of assistance.  And I think it's clear, based on the report, that both of these families have supports in the area and they've both been willing to cooperate with intact services thus far.

Considering the level of cooperation and engagement in this case. I don't think that a wardship is appropriate here, certainly not that guardianship be removed.  The children's needs are being met and this family has been able to meet those needs.  So at this time, I am asking for this case to close."

¶ 22        The trial court found it was in the best interest of the minors and the public that the minors be adjudicated neglected and named wards of the court.  Specifically, the court

- 7 -

(1) made J.J. and J.S. wards of the court, (2) ordered the children remain in the custody of respondent mother, whom it determined to be fit, and (3) placed guardianship with DCFS. On June 4, 2020, the court entered a written dispositional order to that effect.

¶ 23                                    E. Motion to Reconsider

¶ 24        On July 2, 2020, respondent mother filed a motion to reconsider the dispositional order, alleging (1) respondent mother was successful in rectifying the conditions that led to the finding of neglect and (2) the ruling to grant DCFS guardianship and have the minors be made wards of the court was contrary to the minor's best interests. On July 28, 2020, the trial court conducted a hearing on the motion to reconsider. At the hearing, respondent mother called two witnesses.

¶ 25        Athena Focazio-Moran, a caseworker with BCS, testified she took over J.J.'s and J.S.'s case within the last week. Since the entry of the dispositional order, respondent mother had not been referred for any additional services. Previously, respondent mother completed mental health counseling and substance abuse counseling. Focazio-Moran testified she was unable to provide new information about respondent mother's drug screens.

¶ 26        Respondent mother testified she successfully completed substance abuse counseling and mental health counseling. Since the June 3, 2020, dispositional hearing, respondent mother completed three or four drug screens, all of which came back negative.

¶ 27        After presenting testimony through Focazio-Moran and respondent mother, counsel for respondent mother asked the trial court "to reconsider its decision on the dispositional order and vacate the wardship or at the very least restore guardianship to the parents." Counsel for respondent father Allen B. recommended guardianship remain with DCFS and that the trial court retain wardship. The State recommended the dispositional order stand

where (1) more time was needed to show respondent mother fully addressed her substance abuse issue and (2) the parents would benefit from services to help with co-parenting. The guardian *ad litem* recommended the dispositional order remain in place because of the seriousness of the substance abuse issue and more time was required to ensure respondent mother had fully addressed the issue.

¶ 28      The trial court denied respondent mother's motion to reconsider the dispositional order. Specifically, the court stated,

> "First of all, the motion that's brought is the motion to reconsider dispositional order. Reconsideration of an order asks the [c]ourt to measure the order as of the time that it's entered, not as of a subsequent time, so evidence that relates to events that may have occurred post disposition really does not answer the question of whether the dispositional order was the appropriate one to—to enter. But they may relate to other issues in the case.
>
> So what the [c]ourt really has to measure is what was the evidence, the law, et cetera, at the time that the dispositional order was entered on June 3rd, and that also does have to take into consideration [respondent father Allen B.'s] position, not elaborated on, but that from his point of view, there is merit in continuing guardianship and wardship, and that seems to be the view of the other parties as well.
>
> In regard to the motion to reconsider, the evidence was clear. I agree that although some time has passed since the event

- 9 -

leading to adjudication and then disposition, it was an event serious enough for the [c]ourt to consider awarding custody to [DCFS], that that was in the children's best interests, and also taking into consideration the position of other parties that there are—in addition to [respondent mother's] own need to treat substance abuse, which it looks like she's well engaged in and doing well, but that parties' position is that there is merit to other issues such as co-parenting issues to be resolved through continuing guardianship and wardship.

So measuring the evidence and law at the time of the dispositional order entered, that being on June 3rd, the decision to find the parents fit, able and willing to exercise custody but that it was in the best interests of the minors to award guardianship to [DCFS], to continue wardship was the appropriate order.

So the motion to reconsider is denied. The real question is should the [c]ourt modify any conditions of the current order. And to that extent, evidence presented here today of what's happened in the meantime is significant because it does look like [respondent mother] has continued to make significant progress. I believe her testimony that she's doing well—that she's doing well in her testing and that there are not a lot of other available services that she requires.

On the other hand. I'm not certain on this record that there are no other available services that the family might engage in because the family incudes [respondent father Allen B.], not just [respondent mother] and the kids. And they may be available, and it would be appropriate for a case agency such as [BCS] not only to monitor substance use but to see if there are other available services to facilitate family unification as best as possible. So there is continuing merit in guardianship still and wardship even though [respondent mother] is successfully treating her substance abuse.

So to the extent that the [c]ourt is being asked to modify its prior order, that motion is denied as well."

¶ 29 This appeal followed.

¶ 30 II. ANALYSIS

¶ 31 Respondent mother appeals from the trial court's June 2020 dispositional order and the court's denial of her motion to reconsider. On appeal, respondent mother argues the trial court (1) erred in making J.J. and J.S. wards of the court and (2) in the alternative, erred in denying respondent mother's motion to reconsider the dispositional order. We address these issues in turn.

¶ 32 A. Dispositional Order

¶ 33 Following an adjudication of neglect, the trial court must hold a dispositional hearing, during which "the court must first determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court." *In re M.M.*, 2016 IL 119932,

- 11 -

¶ 17, 72 N.E.3d 260 (citing 705 ILCS 405/2-21(2), 2-22(1) (West 2012)). If the court makes the minor a ward of the court, the court must fashion a dispositional order that best serves the interest of the minor. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 40, 73 N.E.3d 1178; see also 705 ILCS 405/1-3(4.05) (West 2018).

¶ 34        In fashioning a dispositional order, the overriding concern is the best interest of the child. *In re Beatriz S.*, 267 Ill. App. 3d 496, 500, 641 N.E.2d 953, 956 (1994). "On review, a trial court's decision 'will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order.' " *Al. S.*, 2017 IL App (4th) 160737, ¶ 41 (quoting *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008)). "A court's factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where its finding is unreasonable, arbitrary, or not based on the evidence presented." *Al. S.*, 2017 IL App (4th) 160737, ¶ 41. An abuse of discretion occurs when no reasonable person would agree with the trial court's decision. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177, 797 N.E.2d 687, 696 (2003). We afford great deference to the trial court's findings because it is in a superior position to assess credibility and weigh evidence. *Al. S.*, 2017 IL App (4th) 160737, ¶ 41.

¶ 35        After reviewing the record, we cannot say the trial court's findings were of a nature that the opposite conclusion is clearly evident or that its findings were unreasonable, arbitrary, or not based on the evidence presented. Here, the manifest weight of the evidence supported the court's decision to make J.J. and J.S. wards of the court. In this matter, respondent mother stipulated to the allegations of neglect where she exposed J.J. and J.S. to substance abuse. In addition, the September 7, 2019, police report raised legitimate concerns about respondent mother's ability to manage her substance abuse.

¶ 36    Respondent mother argues the trial court failed to give a justification for its adjudication of wardship in its dispositional order or in its oral pronouncements and the record offers no explanation. Respondent mother asserts the record shows she completed the requisite services—substance abuse and mental health services, she participated in drug screens that have only provided negative results, and the children are happy and heathy under her care.

¶ 37    The trial court found based on the dispositional reports and the evidence and recommendations provided by the parties that respondent mother needed continued services and time to provide additional drug drops to fully address her substance abuse problem. The State acknowledged respondent mother engaged in services and appeared to be doing very well but noted concern with the minimal number of drug screens completed. The guardian *ad litem* agreed with the State. According to the June 1, 2020, dispositional report, respondent mother had completed only two drug screens prior to the June 2020 dispositional hearing.

¶ 38    We find based on the statutory best-interest factors that the evidence shows the trial court's decision to make J.J. and J.S. wards of the court was appropriate. For example, in considering the physical safety and welfare of J.J. and J.S., the court properly determined wardship to be necessary in light of the evidence of respondent mother's substance abuse and the limited number of drug screens completed. Notably, the dispositional order allowed J.J. and J.S. to remain in the care of respondent mother even though the order granted DCFS guardianship of J.J. and J.S.

¶ 39    In *In re E.L.*, 353 Ill. App. 3d 894, 896, 819 N.E.2d 1191, 1193 (2004), the trial court, after adjudicating the children neglected, ordered the children to remain in the custody of the respondent mother, whom it determined was fit, but placed guardianship with DCFS. The Third District held, "So long as custody remains with the [parent], we can perceive no error in

- 13 -

also granting guardianship with DCFS." *Id.* at 898. "We recognize that the court can generally split the guardianship and custody of a minor." *In re T.L.C.*, 285 Ill. App. 3d 922, 926, 675 N.E.2d 228, 230 (1996).

¶ 40    Here, despite respondent mother cooperating with services, the trial court's decision placing guardianship with DCFS to monitor the situation and ensure respondent mother continued to progress best served the minors by putting in place mechanisms to ensure the minor's safety and health. For these reasons, we cannot say the court's findings, which led to its decision to make J.J. and J.S. wards of the court, were against the manifest weight of the evidence or that the court's dispositional order was an abuse of discretion, despite the fact the court found respondent mother fit. See, *e.g.*, *E.L.*, 353 Ill. App. 3d at 898.

¶ 41                              B. Motion to Reconsider

¶ 42    Respondent mother argues if we fail to find the trial court erred in making J.J. and J.S. wards of the court, then in the alternative, the trial court erred in denying respondent mother's motion to reconsider the dispositional order. Specifically, respondent mother asserts the evidence at the hearing on the motion to reconsider, taken with the evidence at the dispositional hearing, established it did not serve the children's best interest to make them wards of the court. We note respondent mother in her brief also refers to the motion to reconsider the dispositional order as a posttrial motion to modify the dispositional order.

¶ 43    " 'The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law.' " *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 324, 943 N.E.2d 752, 758 (2010) (quoting *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1140, 815 N.E.2d 476, 481 (2004)). "When a movant seeks

reconsideration based on newly discovered evidence, 'a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable.' " *Id.* (quoting *Stringer*, 351 Ill. App. 3d at 1141). "A trial court's decision to grant or deny a motion to reconsider lies within its sound discretion, and this court will not disturb such a ruling absent an abuse of discretion." *Id.* (citing *Stringer*, 351 Ill. App. 3d at 1140).

¶ 44 Here, respondent mother failed to provide any newly discovered evidence—that existed at the time of the June 3, 2020, dispositional hearing—at the hearing on her motion to reconsider the dispositional order. Accordingly, we find the trial court did not err in denying respondent mother's motion to reconsider the dispositional order where the entry of the dispositional order was proper given the evidence presented at the dispositional hearing.

¶ 45 To the extent respondent mother frames her motion to reconsider as a posttrial motion to modify the dispositional order, we look to whether respondent mother presented any new evidence to justify a modification of the dispositional order. At the hearing on the motion to reconsider, the only new evidence respondent mother presented showed since the June 3, 2020, dispositional hearing, she completed three or four drug screens, all of which came back negative.

¶ 46 While the trial court determined respondent mother continued to appropriately address her substance abuse issue, the court found a modification of the dispositional order was improper where the family as a whole, including respondent father Allen B., could benefit from continued services. Counsel for respondent father Allen B. recommended guardianship remain with DCFS and that the trial court retain wardship. The State recommended the dispositional order stand where (1) more time was needed to show respondent mother fully addressed her substance abuse issue and (2) the parents would benefit from services to help with co-parenting.

- 15 -

The guardian *ad litem* recommended the dispositional order remain in place because of the seriousness of the substance abuse issue and more time was required to ensure respondent mother had fully addressed the issue.

¶ 47        Based on the record, we find the trial court did not err in denying respondent mother's motion to reconsider even when viewed as a motion to modify the dispositional order.

¶ 48                        III. CONCLUSION

¶ 49        For the foregoing reasons, we affirm the trial court's judgment.

¶ 50        Affirmed.