NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200454-U

NO. 4-20-0454

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.R., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
|       Petitioner-Appellee, | ) | Sangamon County |
|       v. | ) | No. 20JA185 |
| Alexis R., | ) | |
|       Respondent-Appellant). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court did not err in finding respondent unfit, unable, or unwilling to care for the minor child; making the minor a ward of the court; and placing custody and guardianship with the Department of Children and Family Services.

¶ 2    Respondent, Alexis R., appeals the trial court's dispositional order finding her unfit, unable, or unwilling for other than financial circumstances alone to care for her minor child; making the minor a ward of the court; and placing the minor in the custody and guardianship of the Illinois Department of Children and Family Services (DCFS). Respondent argues that the trial court's determination was error. We affirm.

¶ 3                      I. BACKGROUND

¶ 4        Respondent is the mother of M.R., who was born on July 7, 2020. On July 9, 2020, the State filed a petition for adjudication of wardship, alleging M.R. was neglected in that her environment was injurious to her welfare as evidenced by (1) her siblings being adjudicated neglected and dependent and respondent's failure to make reasonable progress toward the return of the children to her care and (2) respondent's drug use. The petition additionally alleged M.R. was dependent in that she was without proper care due to respondent's mental disability.

¶ 5        In August 2020, respondent admitted the first allegation in the petition. The remaining allegations in the State's petition were dismissed, and the matter was set for a dispositional hearing. The same day, the trial court entered an adjudicatory order finding M.R. was a neglected minor and placing temporary custody and guardianship with DCFS.

¶ 6        Prior to the dispositional hearing, M.R.'s caseworker, Summer Gosney, filed a dispositional report with the trial court. According to her report, respondent had not been cooperative with her or DCFS since the case opening. While respondent had completed parenting classes and attended a few visits with M.R. via Zoom videoconferencing software, she failed to engage in "Preventing Abusive Relationships" classes as recommended in her service plan, had been discharged from anger management classes due to her lack of attendance, and failed to provide Gosney with proof that she attended her scheduled counseling appointment in August. Gosney's report specifically stated that "[i]t is a concern to the agency that [respondent] has severe mental health issues that have not been addressed at this time." Between July and August 2020, responded failed to appear for two scheduled drug screenings and tested positive for marijuana in another. Finally, Gosney's report stated that according to a psychological assessment performed in March 2020, respondent is categorized as a "low-functioning adult." The assessment further stated that respondent " 'needs to be considered at high risk of harm if

her children are left unsupervised in her care,' " and " 'needs to be considered at an extremely high risk of harm to herself and others.' "

¶ 7        The court-appointed special advocate (CASA) also filed a report prior to the dispositional hearing. The CASA's report stated that M.R. was doing well in her current placement with her biological older brother, who is respondent's oldest child. M.R. had an established eating and sleeping schedule that was typical for her age. The CASA's report recommended that M.R. remain in her current placement, determining that it was "the best possible placement[ ] at this time."

¶ 8        The trial court held the dispositional hearing in September 2020. In lieu of a report of proceedings, respondent has provided a bystander's report memorializing the hearing pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). According to the report, the State requested that M.R. be made a ward of the court and placed in the custody and guardianship of DCFS. The State further requested that M.R. remain in her current foster placement and for respondent to comply with her service plan. Respondent objected to M.R. being placed in the custody and guardianship of DCFS and argued that M.R. should be returned to her care. Specifically, respondent argued that she had completed parenting classes, complied with her service plan, and regularly attended visits with M.R. via videoconference. The guardian *ad litem* (GAL) agreed with the State's recommendation. The GAL stated that he "would like to see a completion of services before he would support a request to return [M.R.] home." Gosney stated that respondent still needed to provide her with proof of income and undergo a psychological assessment to determine whether she needed medication to manage her mental illness. Gosney indicated respondent could not visit M.R. until she received a note from respondent's counselor that respondent was stabilized.

¶ 9      At the conclusion of the hearing, the trial court made M.R. a ward of the court and placed custody and guardianship with DCFS. The court declined to give DCFS the right to place M.R. with respondent. The court, quoting from the dispositional report prepared by the caseworker, explained that respondent was "low functioning" and "there was a high risk of harm if [respondent] was alone with a child." The trial court also noted that respondent needed to complete domestic violence, mental health, and substance abuse services before M.R. could be returned to her care. In its written dispositional order, the court (1) found respondent unfit, unable, or unwilling for other than financial circumstances alone to care for M.R.; (2) ordered M.R. be made a ward of the court; and (3) placed M.R. in the custody and guardianship of DCFS.

¶ 10      This appeal followed.

¶ 11      II. ANALYSIS

¶ 12      On appeal, respondent challenges the trial court's dispositional order finding respondent unfit, unable, or unwilling to care for M.R.; making M.R. a ward of the court; and placing M.R. in the custody and guardianship of DCFS. Specifically, respondent argues the court erred because she completed parenting classes, attended visits with M.R., engaged in a substance abuse assessment, and there were "no incidents of substance abuse, *** domestic violence, or *** neglect."

¶ 13      Following a determination by the trial court that a minor is abused, neglected, or dependent, "the court shall then set a time *** for a dispositional hearing." 705 ILCS 405/2-21(2) (West 2018). "Prior to committing a minor to the custody of a third party, such as DCFS, a trial court must first determine whether the parent is unfit, unable, or unwilling to care for the child, and whether the best interest of the minor will be jeopardized if the minor remains

in the custody of his or her parents." (Emphasis omitted.) *In re M.M.*, 2016 IL 119932, ¶ 21, 72 N.E.3d 260 (citing 705 ILCS 405/2-27(1) (West 2012)). "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that he be made a ward of the court, and, if he is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2018). "The best interest standard governs both the determination of whether an adjudicated minor should be made a ward of the court and, if so, the determination of the minor's proper disposition." *M.M.*, 2016 IL 119932, ¶ 24.

¶ 14    "On review, a trial court's decision 'will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order.' " *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41, 73 N.E.3d 1178 (quoting *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008)). A court's factual finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if its finding is unreasonable, arbitrary, or not based on the evidence. *Id.* "Under this standard, we give deference to the trial court as it is in a better position to observe the witnesses, assess credibility, and weigh the evidence." *Id.* "With regard to the function of the trial court to make the proper disposition, the choice of dispositional order rests within the sound discretion of the trial court." *In re J.S.*, 151 Ill. App. 3d 884, 887, 504 N.E.2d 513, 515 (1987). "Such order will not be overturned absent an abuse of discretion." *Id.*

¶ 15    Here, we find the trial court's findings were not against the manifest weight of the evidence because the record contains ample support for its determination that respondent was unfit, unwilling, or unable to care for M.R., and it was in M.R.'s best interests that she be placed in the custody and guardianship of DCFS. Although we acknowledge respondent attended her

parenting classes and some visits with M.R., she failed to complete significant components of her service plan. She was discharged from her anger management class due to nonattendance and did not complete her "Preventing Abusive Relationships" course. She additionally failed to appear for two of three scheduled drug screenings and tested positive for marijuana in another. Gosney never received confirmation that respondent attended her scheduled counseling appointment or that her mental condition was stable. Gosney's dispositional report specifically expressed concern that respondent had "severe mental health issues that have not been addressed at this time." Moreover, respondent's most recent psychological assessment reflected that she had an "extremely high risk of harm to herself and others." Finally, the CASA's report stated that M.R. was doing well in her current foster placement, maintaining a proper eating and sleeping schedule for an infant, and recommended that she remain there. Based on this record, we conclude that the trial court's findings that respondent was unfit, unable, or unwilling to care for M.R. and that M.R. should be made a ward of the court were not against the manifest weight of the evidence.

¶ 16      Respondent also argues that the trial court erred in placing custody and guardianship with DCFS. She asserts that "[w]hile closure of the case may not have been warranted at the time of disposition, the more appropriate and factually-supported outcome for [the] hearing would have been to place the child back in the custody of the [r]espondent and formulate an after-care plan to insure the safety of the child." As previously stated, Gosney's dispositional report reflected her concerns about respondent's mental health and that respondent posed an "extremely high risk of harm to herself and others." In light of respondent's mental health issues and the fact M.R. was doing well in her foster placement, we cannot conclude the court abused its discretion in its dispositional order.

¶ 17                                    III. CONCLUSION

¶ 18         For the reasons stated, we affirm the trial court's judgment.

¶ 19         Affirmed.