NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241471-U

NO. 4-24-1471

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 23JA202 |
| v. | ) | |
| Samantha R., | ) | Honorable |
| Respondent-Appellant). | ) | Timothy J. Cusack, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) the trial court's determination that
respondent was unfit at the dispositional hearing was not against the manifest
weight of the evidence and (2) its placement of respondent's minor child with the
Illinois Department of Children and Family Services was not an abuse of
discretion.

¶ 2    Respondent, Samantha R., appeals the trial court's dispositional order finding her

unfit, making her minor child, A.H. (born 2019) a ward of the court, and placing guardianship of

him with the Illinois Department of Children and Family Services (DCFS). On appeal, she

argues the court's unfitness finding was against the manifest weight of the evidence, and its

decision to place A.H. with DCFS was an abuse of discretion. She asks us to reverse the court's

order and remand the case so that A.H. may be placed with her.

¶ 3    We affirm.

¶ 4                               I. BACKGROUND

¶ 5        On November 8, 2023, DCFS filed a petition for adjudication of wardship of

A.H., alleging he was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987

(Act) (705 ILCS 405/2-3(1)(b) (West 2022)) in that his environment was injurious to his welfare.

The petition alleged that on or about June 29, 2023, DCFS received a hotline call concerning

A.H.'s brother, M.H. (born 2015), having various injuries observed on his body and face. The

same day, a DCFS investigator spoke to M.H. at the home of his father, Ryan H., who is now

deceased. M.H. told the investigator that when he was not living with his father, he lived with

respondent, her boyfriend, Joel C., and his four siblings, including A.H. M.H. stated that a few

days before, he attempted to run away from respondent's home after she became angry with him

when she believed he gave her the middle finger. M.H. stated that respondent grabbed him,

slapped his face multiple times, and forced his right arm into his mouth, making it hard for him

to breathe. This incident was observed by multiple siblings. A recording of the incident taken by

one of the children showed respondent's arm around M.H.'s neck while M.H.'s feet appeared to

be off the ground. M.H. stated that respondent and Joel often became upset with the children and

would yell, curse, spank them, "pop them in the mouth," and slap them. M.H. stated that he felt

safe living with his father but not respondent. Interviews with M.H.'s siblings and other family

members confirmed that respondent and Joel were frequently physical with both the children and

each other and that there was ongoing drug use in the home.

¶ 6        The petition concluded that, based on the allegations of violence concerning

respondent, it was in the best interest of A.H. and the public that he be adjudicated a ward of the

court.

¶ 7        At the time of A.H.'s birth in 2019, Ryan H. executed a voluntary

acknowledgement of paternity for the minor. However, DNA testing performed in 2021 excluded

him as A.H.'s biological father. At a hearing, respondent told the trial court that she believed the biological father of A.H. was an individual named Ben G. The court ordered DNA testing between A.H. and Ben, and the results revealed a 99.99% probability of paternity. On April 24, 2024, the court found Ben to be A.H.'s legal father and granted the petition of A.H.'s guardian *ad litem* (GAL) to declare the nonexistence of a parent-child relationship between A.H. and Ryan H. The same day, Ben requested to surrender his parental rights. In a supporting memorandum, he stated he had not had a relationship with respondent since before A.H.'s birth, had no relationship with A.H., and had experienced harassment and threats from respondent. The GAL filed a response, arguing that A.H. had the right to "physical, mental, emotional, and financial support from both his parents," including Ben. In an order dated May 15, 2024, the court denied Ben's motion to surrender his parental rights, finding the surrender was not in A.H.'s best interest. Ben filed a motion to reconsider, which was also denied.

¶ 8　　　　On October 16, 2024, the trial court held an adjudicatory hearing on the petition for adjudication of wardship. The State moved to enter the narrative portion of the petition and informed the court it had witnesses who would testify consistently with the information therein. No other party presented evidence or argument. Based on the State's petition and proffer, the court found the State had proven by clear and convincing evidence that A.H. was neglected.

¶ 9　　　　The trial court then moved immediately to a dispositional hearing. The court considered a report prepared by a caseworker on respondent's case. The report stated that respondent had either completed or was in the process of complying with all of her recommended services including parenting classes, a substance abuse assessment, anger management classes, and counseling. The report found no concerns about A.H. remaining in the home with her as the home was appropriate and his needs were being met. It further noted that

respondent had shown the ability to discipline A.H. appropriately, that there were no new reported physical incidents between respondent and her children, and that A.H. stated he felt safe in the home.

¶ 10 At the hearing, counsel for respondent asked the caseworker if she believed respondent met minimal parenting standards. The caseworker replied that she did. On questioning by Ben's counsel, the caseworker acknowledged that respondent's case was initiated based on reports of her violence toward M.H., and because of this, she should have been recommended to complete domestic violence services. However, these services were not recommended and, therefore, had not been completed at the time of the dispositional hearing. The caseworker explained that a computer program was used to generate recommended services based on a parent's initial integrated assessment and the program had not recommended domestic violence services for respondent.

¶ 11 The State recommended that A.H. be made a ward of the court but that respondent be found fit and A.H. continue to reside with her. Counsel for respondent adopted this recommendation. The GAL also believed respondent should be found fit but requested that she be ordered to continue engaging in mental health counseling and complete domestic violence services. Counsel for Ben requested that the trial court find respondent unfit as to A.H. due to her issues with domestic violence remaining unaddressed.

¶ 12 The trial court first found respondent unfit as to M.H., stating that she needed to comply with her service plans, undergo personal and family counseling, if deemed appropriate, and complete a drug assessment and domestic violence services. It then extended this finding to A.H. The court found Ben fit but stated that a "warming up process" was needed to establish a relationship between him and A.H. before A.H. could be placed with him. At the conclusion of

the court's findings, the GAL asked if the court was ordering A.H. removed from respondent's home. The court asked the GAL if he believed it was in A.H.'s best interest to remain with respondent, to which the GAL responded, "Not if she is unfit." The court then discussed its reasoning for finding respondent unfit, stating, "She needs domestic violence counseling. I just don't see how you make that work with a fit parent. That doesn't seem to me to be a fit parent." The GAL noted his agreement.

¶ 13       In a dispositional order entered following the hearing, the trial court found A.H. neglected, made him a ward of the court, and placed custody of him with DCFS. A handwritten note on the order stated, "The court finds that it is in [A.H.'s] best interest to be removed from the home." In a supplemental task order entered the same day, the court ordered respondent to, among other things, undergo a substance abuse assessment and any treatment recommended, attend individual counseling, complete domestic violence classes, and submit to random drug tests twice per month.

¶ 14       This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16       On appeal, respondent does not challenge the trial court's adjudication of neglect as to A.H. Nor does she appear to contest its finding that it was in A.H.'s best interest to make him a ward of the court. She instead takes issue with the court's placement of A.H. with DCFS and the unfitness finding that was necessary to support that placement.

¶ 17       Under section 2-22 of the Act, once a minor has been adjudicated neglected and made a ward of the court, the trial court must "determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22 (West 2022). The Act provides four dispositions from which a court may choose. *Id.* § 2-23. It may (1) continue

the custody of the minor with his parents, guardian, or legal custodian; (2) place the minor in accordance with section 2-27 of the Act (*id.* § 2-27); (3) restore custody to the parents, guardian, or legal custodian, or (4) order the minor partially or completely emancipated. *Id.* § 2-23. Section 2-27 of the Act allows a court to place a minor with a third party, such as DCFS, if it finds the minor's parents are

> "unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents." *Id.* § 2-27.

A trial court's finding of dispositional unfitness will be reversed only if it is against the manifest weight of the evidence or if the record clearly demonstrates that the opposite result was proper. *In re A.T.*, 2015 IL App (3d)140372, ¶ 13. The court's choice of dispositional order will not be overturned absent an abuse of discretion. *In re J.S.*, 151 Ill. App. 3d 884, 887 (1987).

¶ 18        Respondent argues the trial court's dispositional unfitness finding was against the manifest weight of the evidence where (1) she successfully completed all of her recommended services, (2) there were no further allegations of physical abuse against any of the children, (3) the State and GAL both recommended she be found fit, and (4) the only person who recommended she be found unfit was Ben, who "had no intimate first-hand knowledge or familiarity with the relationships between [respondent] and M.H. and A.H. and had previously actively sought to terminate his parental rights."

¶ 19        We find the trial court's determination was not against the manifest weight of the evidence. Respondent is correct that she completed, or was in the process of completing, all services recommended as part of her case plan. However, at the time of the dispositional hearing,

domestic violence services had not been recommended, and so respondent had not completed or even begun them. While it is not respondent's fault that these services were not recommended, and it instead appeared to be an oversight in DCFS's case management, the fact of the matter is that at the time the court was tasked with determining whether respondent was fit and if it would be in A.H.'s best interest to be placed with her, the circumstances giving rise to the adjudication of neglect for A.H. had not been addressed. Because of this, and even taking into account the recommendations of the State and the GAL and the fact that no further incidents of domestic violence had been reported, we cannot say the court's determination was against the manifest weight of the evidence. See *In re M.B.*, 332 Ill. App. 3d 996, 1005 (2002) (holding the trial court's unfitness finding was not against the manifest weight of the evidence where the respondent mother had completed some services but had not completed services aimed at rectifying the issues leading to her daughter's removal from her care).

¶ 20 Respondent next argues that the trial court's dispositional order was an abuse of discretion. She specifically contends that A.H. should not have been removed from her care where A.H. felt safe in the home, his needs were being met, and he required the stability of his relationship with respondent as he built a relationship with his biological father. She notes that even after the petition for adjudication of wardship was filed, the State never filed a shelter care petition to remove A.H. from the home, indicating it saw no necessity to do so for the minor's well-being.

¶ 21 We find the trial court did not abuse its discretion in finding it in A.H.'s best interest to be removed from respondent's home and placed with DCFS. Although respondent is correct that A.H. was never removed from her care after the petition for adjudication of wardship was filed, we will not attempt to guess the reason for this, nor will we treat it as binding on the

court's later decision. Instead, we will consider the evidence the court was presented with at the dispositional hearing and determine if its resulting dispositional order was an abuse of discretion.

¶ 22　　　At the hearing, the trial court was presented with evidence that respondent had not undergone any domestic violence services, despite her children being adjudicated neglected based on allegations of frequent physical violence at her hands. When the court asked the GAL if he believed it was in A.H.'s best interest to remain with respondent, the GAL stated his agreement that respondent was not fit where she was still in need of domestic violence counseling and if she was not fit, it was not in A.H.'s best interest to be placed with her. From this, we do not find the court's decision to place A.H. with DCFS to be an abuse of discretion.

¶ 23　　　　　　　　　　　III. CONCLUSION

¶ 24　　　For the reasons stated, we affirm the trial court's judgment.

¶ 25　　　Affirmed.